155 So. 233

## STATE v. TRI–STATE TRANSIT CO. OF LOUISIANA, Inc., et al.

No. 32377.

Jan. 2, 1934.

On Rehearing, May 21, 1934.

See, also, 173 La. 682, 138 So. 507.

Gaston L. Porterie, Atty. Gen., and Peyton R. Sandoz and Justin C. Daspit, Sp. Asst. Attys. Gen. (White, Holloman & White, of Alexandria, Burke & Smith, of New Iberia, Robert J. O'Neal, of Shreveport, and E. R. Kaufman, of Lake Charles, of counsel), for the State.

Dickson & Denny and Foster, Hall, Barret & Smith, all of Shreveport, for appellee Tri-State Transit Co. of Louisiana.

Pugh, Grimmet & Boatner and J. N. Marcantel, all of Shreveport, for appellee United States Fidelity & Guaranty Co.

Harold A. Moise, of New Orleans (Edward M. Heath, of New Orleans, of counsel), for Board of Commissions of Port of New Orleans, amicus curiæ.

Julian B. Humphrey, of New Orleans, amicus curiæ.

BRUNOT, Justice.

This is a suit against the Tri-State Transit Company of Louisiana, Inc., and its bondsman, the United States Fidelity & Guaranty Company, of Maryland, for the recovery of taxes alleged to be due the state by the Tri-State Transit Company. The sum sued for, including penalties and attorney's fees, is $30,312.50, subject to a credit of $10,344.86. We quote from the prayer of the petition the following:

"Wherefore, petitioner prays for * * * judgment against the Tri-State Transit Company of Louisiana, Inc., in the full sum of Twenty Thousand One Hundred Forty-Seven and 80/100 ($20,147.80) Dollars, representing the tax of 4¢ per gallon on gasoline or motor fuel imported into the State of Louisiana, by defendant Corporation, as dealer, and levied under the provisions of Act 6 of the Extra Session of the Legislature of Louisiana of the year 1928, as amended by Act 8 of 1930, and Act 16 of 1932; and in the further sum of Five Thousand Thirty-Six and 95/100 ($5,036.-95) Dollars, representing the tax of 1¢ per gallon on gasoline or motor fuel imported into the State of Louisiana, by defendant Corporation, as dealer, and levied under the provisions of Act 1 of the Extra Session of the Legislature of Louisiana of 1930, the same being a constitutional amendment submitted to the people and adopted by the qualified electors of the State of Louisiana at an election held November 4, 1930, and in the further sum of Three Thousand Two Hundred Sixty-Two and 34/100 ($3,262.34) Dollars, representing a penalty of 20% on the amount due by defendant Corporation for the taxes aforesaid, as a delinquent, and in the further sum of One Thousand Eight Hundred Sixty-Five and 41/100 ($1,865.41) Dollars as attorney's fees, the whole being subject to a credit of Ten Thousand Three Hundred Forty-Four and 86/100 ($10,344.86) Dollars, leaving a net balance due by defendant Corporation for taxes, penalties and attorney's fees of Nineteen Thousand Nine Hundred Sixty-Seven and 64/100 ($19,967.64) Dollars, as hereinabove set forth, and judgment for which is accordingly prayed for, together with legal interest thereon from judicial demand."

Petitioner further prays for a judgment against both defendants, in solido, for $5,000,

the amount of the surety's liability on the bond. This judgment, however, is to be included as part of the total sum of such judgment as may be rendered against the Tri-State Transit Company.

Petitioner also prays for an injunction restraining the Tri-State Transit Company from the further pursuit of its business until it has paid the taxes, penalties, and attorney's fees sued for.

Both defendants excepted to the petition as not disclosing a right or cause of action. These exceptions were heard and overruled.

The Tri-State Transit Company then filed a motion to strike out the word "distribution" wherever that word appears in the plaintiff's petition. Thereafter the Tri-State Transit Company pleaded the unconstitutionality of Act No. 6 of the Extra Session of 1928, as amended by Act No. 8 of 1930 and Act No. 16 of 1932, alleging in its plea that the title of the act is defective, that the body of the act is broader than its title, and that the provisions of the act contravene the commerce clause of the Federal Constitution.

Following the foregoing pleas, the United States Fidelity & Guaranty Company filed a plea of res adjudicata, alleging therein that the right of the plaintiff to recover taxes, penalties, interest, and attorney's fees growing out of shipments of gasoline into this state during the year 1931, or prior to 1932, was foreclosed by the judgment of the district court of Caddo parish, rendered in the following numbered and entitled suit, to wit: "No. 58,738, State of Louisiana v. Tri-State Transit Company of Louisiana, Inc."

Both defendants answered the suit. These answers are substantially the same. Both pleaded, therein, the unconstitutionality of Act No. 6 of 1928 and also the unconstitutionality of Act No. 1 of the Extra Session of 1930, which act was a proposed amendment to the Constitution, which was formally ratified by the electorate of the state by a vote of 116,627 for to 7,085 against. On the merits, both defendants deny any indebtedness to the plaintiff, and all averments of the petition with respect to the indebtedness, etc., alleged therein, are put at issue by the answers.

By consent, the plea of res adjudicata, as to gasoline shipped into the state during the year 1931, was sustained (Tr. p. 39) and all pleas of unconstitutionality were referred to the merits.

The minutes do not show what disposition was made of the motion to strike out. The minutes merely show (Tr. p. 4) that plaintiff moved to refer the motion to the merits, the defendants objected, and the matter was continued for argument.

The case was submitted on the issues stated and the following agreed statement of facts:

"Statement of facts and admissions agreed to by counsel for plaintiff and defendants, at Shreveport, La., on this 16th day of December, A. D., 1932, the same to be used upon the trial hereof in lieu of individual proof of each admitted fact, subject to all pleas, exceptions and judgments heretofore filed.

"It Is Admitted:

"1: That the gasoline imported into the State of Louisiana by the Tri-State Transit Co., from Feb. 1, 1931 to August 31, 1932, both inclusive, aggregates the sum of 519,273 gross gallons.

"2: That the aforesaid gross gallonage of gasoline is received in tank cars from other states, and unloaded from such tank cars into a storage tank of defendant company located in Shreveport.

"3: That the storage tank of defendant company referred to, will hold the contents of two railroad tank cars of an average capacity of 8000 gallons each.

"4: That defendant receives and stores in its aforesaid storage tank approximately four railroad tank cars of gasoline per month.

"5: That when the gasoline referred to has come to rest in defendant company's aforesaid storage tank, it is thereafter distributed therefrom into the motor vehicles of defendant company and the Caddo Transfer & Warehouse Co. The storage tank referred to is equipped with a regulation gasoline measuring pump, which records the number of gallons of gasoline withdrawn from said storage tank and distributed to the respective freight and motor vehicles of defendant company and to such motor vehicles of the Caddo Transfer & Warehouse Co., as are supplied with gasoline from the storage tank in question.

"6: The gasoline stored by the defendant company as above set forth comes from other states and is consigned to defendant company at Shreveport, La. The Tri-State Transit Company is a subsidiary of the Caddo Transfer & Warehouse Company, that is, the capital stock of the defendant company is owned by the Caddo Transfer & Warehouse Company although the two corporations are independently organized and chartered.

"7: That of the gross gallonage of gasoline stored by Tri-State Transit Company in its aforesaid storage tank—aggregating 519,273 gross gallons as above stipulated—from Feb. 1, 1931 to August 31, 1932, both inclusive, the sum of 39,319 gallons were withdrawn therefrom during the 1931 period and distributed to the Caddo Transfer & Warehouse Co., and the sum of 32,260 gallons were withdrawn therefrom during the 1932 period and distributed to the Caddo Transfer & Warehouse Co.

"8: The balance of 447,694 gallons of gasoline of said gross gallonage of 519,273 was withdrawn from the storage tank of defendant company and distributed to its own motor freight and passenger vehicles in the proportion of 244,625 gallons for the 1931 period, and 194,122 gallons for the 1932 period.

"9: The apparent discrepancy of withdrawals and distributions of 8947 gross gallons of gasoline as compared with gross gallons imported into the state is accounted for by the fact that there was on hand in defendant's aforesaid storage tank on August 31, 1932, the sum of 8947 gallons of gasoline which had not yet been withdrawn from said storage tank.

"10: The gasoline transferred from its storage tank by defendant company to motor vehicles of the Caddo Transfer & Warehouse Co., is charged to the latter company at actual cost, exclusive of tax.

"11: Such taxes as have been paid on the gasoline imported by defendant company have been paid to the Supervisor of Public Accounts by exchange bought by defendant company, but such exchange has been paid for from the funds of both defendant company and the Caddo Transfer & Warehouse Co., in

proportion to the amount of gasoline allocated to each from said storage tank.

"12: Of the total gasoline importations from Feb. 1, 1931 to Aug. 31, 1932, both inclusive, the defendant company has paid a tax of 4 cents per gallon on 42,317 gallons of gasoline which it claims to have used in intrastate business, and a tax of 4 cents per gallon on 134,964 gallons of gasoline which it claims to have used in Louisiana in its interstate business. .

"Defendant company has also paid a tax of 1 cent per gallon on 42,317 gallons of gasoline which it claims to have used strictly in its intrastate business, and has not paid the aforesaid tax of 1 cent per gallon on any portion of the gasoline which it claims to have used in its interstate business, whether consumed in part in Louisiana or not.

"13: Of the aforesaid total of gasoline imported into Louisiana by defendant company, of which amount 71,579 gallons were transferred by it to the Caddo Warehouse & Transfer Co. at cost as above set forth, the latter company has paid to the State a tax of 4 cents per gallon on 24,374 gallons of gasoline which it claims to have used in intrastate business, and a tax of 4 cents per gallon on 11,606 gallons which it claims to have used in Louisiana in interstate business. The latter company has also paid a tax of 1 cent per gallon on 24,374 gallons of gasoline which it claims to have used in Louisiana in its intrastate business.

"The latter company has not paid a tax of one cent per gallon on any of the gasoline which it claims to have used in its interstate business, whether consumed in part in Louisiana or not.

"14: The admission of payments of the aforesaid amounts by defendant company and the Caddo Transfer & Warehouse Co., is made by plaintiff for the purpose of establishing payments actually made by said companies, but is not an admission that the amounts so paid are correct or represent all that is due on the gasoline imported by defendant into Louisiana, and stored and held by it in said state and subsequently disposed of by it, as hereinabove set forth.

"15: It is admitted that of the gross importation of 519,273 gallons of gasoline into Louisiana by defendant corporation, 63,730 net gallons were used in intrastate trips, and 142,163 net gallons were used in interstate business within the state of Louisiana, and all the balance of said gross importation of 519,273 gallons of gasoline were used outside of the state of Louisiana, except 8,947 gallons on hand as of Sept. 1, 1932, but the plaintiff does not admit that the taxes due the State of Louisiana may be legally predicated upon the distance traversed by defendant's motor vehicles in either interstate or intrastate business, or that such distances may serve as the basis upon which said taxes may be computed, or that the right of the State to tax said gasoline is gauged by the mileage obtained therefrom by defendant company in its use whether in interstate or intrastate business.

"16: For the purpose of fixing the liability of the bonding company herein, if it should be held liable, and for the purpose of fixing the liability of the Caddo Transfer & Warehouse Co., to the defendant company, if it should be held that the gasoline obtained from defendant company by the Caddo

Transfer & Warehouse Co., is taxable, it is agreed that the following detailed statement is substantially correct:

| 1931 | Intrastate trips in Louisiana | Interstate trips in Louisiana | Interstate outside of Louisiana |
|---|---|---|---|
| Tri-State | 24,050 | 65,223 | 155,362 |
| Caddo | 13,353 | 6,575 | 19,391 |
| 1932 | | | |
| Tri-State | 17,277 | 69,741 | 107,104 |
| Caddo | 11,021 | 5,021 | 16,208 |
| | 65,701 | 146,560 | 298,065 |

"17: It is admitted that defendant company and the Caddo Transfer & Warehouse Co., are both chartered under the laws of Louisiana and both domiciled at Shreveport, in said State. That both said companies operate motor freight and passenger vehicles for hire, said business radiating out of Shreveport, La., and plying in both interstate and intrastate trade and commerce.

"18: That all of the gasoline imported into Louisiana by defendant company is imported solely for its own use and the use of its parent corporation, the Caddo Transfer & Warehouse Co., and that if such use constitutes a sale within the intendment of the Louisiana Gasoline tax laws it is to that extent a seller of gasoline, but that no sales to the trade are made of any of the gasoline so imported.

"19: That monthly reports were timely made by defendant corporation showing importation of gasoline for the preceding month, and likewise reports showing the use of gasoline were timely made, these reports being accompanied by remittances in accordance with the amount claimed to be due by defendant as set forth in this suit, but the plaintiff does not admit that the basis of calculation, or the amount paid, were correct."

The state is the appellant. The decretal parts of the judgment appealed from are as follows:

"It is ordered, adjudged and decreed that the pleas of unconstitutionality filed herein by defendants be all overruled, except the plea of unconstitutionality as to the 1-cent tax levied by Act No. 1 of the Extra Session of the Legislature of the State of Louisiana for the year 1930, later adopted as an amendment to the Constitution of the State of Louisiana, which is sustained as to gasoline used in interstate commerce; and It is ordered, adjudged and decreed that plaintiff's demands be rejected at its costs."

The judgment is evidently based upon the court's conclusion that any claim for taxes on gasoline shipped into the state and used by the consignee in interstate commerce is foreclosed by the decision of this court in State v. Johnson, 173 La. 670, 138 So. 503. The decision in the Johnson Case was handed down November 3, 1931. Since then, and on the dates mentioned, the United States Supreme Court, in five cases, has maintained the constitutionality of tax statutes similar to Act No. 6 of the Extra Session of the Legislature of 1928, as amended, and Act No. 1 of the Extra Session of 1930.

These cases are: Eastern Air Transport, Inc., v. South Carolina Tax Commission, 285 U. S. 147, 52 S. Ct. 340, 76 L. Ed. 673, decided March 14, 1932; Gregg Dyeing Co. v. Query, 286 U. S. 472, 52 S. Ct. 631, 76 L. Ed. 1232, 84 A. L. R. 831; May 31, 1932; American Airways, Inc., v. Wallace, 287 U. S. 565, 53 S. Ct. 15, 77 L. Ed. 498, October 10, 1932; Nashville, C. & St. L. R. Co. v. Wallace, 288 U. S. 249, 53 S. Ct. 345, 77 L. Ed.

730, 87 A. L. R. 1191, February 6, 1933; Edelman v. Boeing Air Transport, Inc., 289 U. S. 249, 53 S. Ct. 591, 77 L. Ed. 1155, April 17, 1933.

█ Where, as in this case, a federal question is involved, the jurisprudence of the United States Supreme Court is controlling. Wadkins v. Producers' Oil Co., 130 La. 308, 57 So. 937; Smith v. Anacoco Lumber Co., Inc., 157 La. 466, 102 So. 574.

█ The tax sued for is an excise tax. It is levied upon all gasoline or motor fuel sold, used, or consumed in the state of Louisiana. To breach the commerce clause of the Federal Constitution it must be shown that the tax is a direct burden upon interstate commerce. Crew Levick v. Pennsylvania, 245 U. S. 292, 38 S. Ct. 126, 62 L. Ed. 295; Sprout v. South Bend, 277 U. S. 163, 48 S. Ct. 502, 72 L. Ed. 833, 62 A. L. R. 45; East Ohio Gas Co. v. Tax Commission, 283 U. S. 465, 51 S. Ct. 499, 75 L. Ed. 1172.

The defendant Tri-State Transit Company admits that the gasoline was imported into this state and that it came to rest in its storage tanks in the state. (Tr. p. 33.) In the case of Hart Refineries v. Harmon, 278 U. S. 499, 49 S. Ct. 188, 73 L. Ed. 475, the court said:

"Interstate transportation having ended, the taxing power of the state in respect of the commodity which was the subject of such transportation, may, so far as the commerce clause of the federal Constitution (article 1, § 8, cl. 3) is concerned, be exerted in any way which the state's Constitution and laws permit, provided, of course, it does not discriminate against the commodity because of its origin in another state."

It is also admitted that the gasoline was withdrawn from the tanks of the Tri-State Transit Company, placed in the motor driven vehicles of that company, and of the Caddo Transfer & Warehouse Company, and used by said companies in the conduct of their business as interstate and intrastate transporters of freight and passengers for hire. It is further admitted that, beginning February 1, 1931, and ending August 31, 1932, the Tri-State Transit Company imported into Louisiana 519,273 gallons of gasoline; that 244,625 gallons thereof were withdrawn from its storage tanks and used in the conduct of its business ending December 31, 1931, and 194,122 gallons during the period ending August 31, 1932.

It is admitted that the 4 cents per gallon tax on the gasoline used by the Tri-State Transit Company and the Caddo Transfer & Warehouse Company, in Louisiana, was paid, and that the Tri-State Transit Company has paid the 1 cent tax levied by Act No. 1 of the Extra Session of 1930 on 42,317 gallons of gasoline used by it exclusively in the conduct of its intrastate business in Louisiana.

█ The judgment maintaining the defendant's plea of res adjudicata is a bar to the plaintiff's recovery of the 4 cents per gallon tax claimed to be due by the Tri-State Transit Company on the gasoline withdrawn from its tanks and used by it and the Caddo Transfer & Warehouse Company in their interstate commerce, during the year 1931, but Act No. 1 of the Extra Session of 1930 was not attack-

ed in the case of State v. Johnson, 173 La. 670, 138 So. 503. Therefore, the judgment maintaining the defendant's plea of res adjudicata (Tr. p. 39), which is based on a judgment of the Caddo district court, which judgment of the Caddo district court is based on the judgment of this court in the Johnson Case, cannot affect the right of the state to collect the tax levied by that act. We therefore find that the state is entitled to recover from the Tri-State Transit Company of Louisiana, Inc., the 4 cents per gallon tax levied by Act No. 6 of the Extra Session of 1928, as amended, on the 194,122 gallons of gasoline withdrawn from its tanks between December 31, 1931, and September 1, 1932, and used by it during that period in the conduct of its business, both interstate and intrastate. We find the sum of this tax to be $7,764.88. We also find that the state is entitled to recover from said defendant the one cent per gallon tax levied by Act No. 1 of the Extra Session of 1930, on 468,009 gallons of gasoline, this being the taxable gallonage, after deducting the 42,319 gallons on which the tax has been paid, and the 8,947 gallons remaining in defendant's storage tanks on September 1, 1932, from the 519,273 gallons imported into the state by the defendant. The sum of this tax is $4,680.09. The total sum of the taxes collectible is $12,444.97. On this sum the state is entitled to recover the statutory penalty of 20 per cent. thereof, and 10 per cent. attorney's fees on the sum of the taxes and penalty.

For the foregoing reasons, the judgment appealed from is avoided and reversed, and it is now decreed that the defendant's pleas of unconstitutionality be rejected, and that there be judgment in favor of the state of Louisiana and against the Tri-State Transit Company of Louisiana, Inc., in the full sum of $12,444.97, together with the statutory penalty of 20 per cent. thereon, and 10 per cent. attorney's fees on said sum and penalty, and for the costs in both courts.

■ It is further decreed that the Tri-State Transit Company of Louisiana, Inc., be enjoined and prohibited from the further pursuit of its business as dealer in gasoline or motor fuel in this state until the delinquent taxes, penalty, and attorney's fees herein adjudged to be due by it are paid.

It is further decreed that there be judgment against the Tri-State Transit Company of Louisiana, Inc., and the United States Fidelity & Guaranty Company of Maryland, in solido, in the sum of $5,000, the amount of the surety bond sued upon. This judgment is to be part of and shall be liquidated by the payment in full of the judgment, penalty, attorney's fees, and costs, rendered herein against the Tri-State Transit Company of Louisiana, Inc.

ROGERS, J., not having heard the argument, takes no part.

### On Rehearing.

ODOM, Justice.

A rehearing was granted in this case solely for the purpose of correcting an error in calculation as to the amount due by defendants made in our original opinion. This fact was inadvertently overlooked at the time the case was argued on rehearing.

According to the agreed statement of facts, the 510,326 gallons of gasoline distributed

by defendant in 1931 and 1932 were used as follows:

(A) Intrastate trips:

| | | | | | |
|---|---|---|---|---|---|
| (1) Tri-State | (1931) | 24,050 | | | |
| (2) Caddo Co. | (1931) | 13,353 | 37,403 | | |
| (3) Tri-State | (1932) | 17,277 | | | |
| (4) Caddo Co. | (1932) | 11,021 | 28,298 | 65,701 | |

(B) Interstate in Louisiana:

| | | | | | |
|---|---|---|---|---|---|
| (5) Tri-State | (1931) | 65,223 | | | |
| (6) Caddo Co. | (1931) | 6,575 | 71,798 | | |
| (7) Tri-State | (1932) | 69,741 | | | |
| (8) Caddo Co. | (1932) | 5,021 | 74,762 | 146,560 | |

(C) Interstate outside Louisiana:

| | | | | | |
|---|---|---|---|---|---|
| (9) Tri-State | (1931) | 155,362 | | | |
| (10) Caddo Co. | (1931) | 19,391 | 174,753 | | |
| (11) Tri-State | (1932) | 107,104 | | | |
| (12) Caddo Co. | (1932) | 16,208 | 123,312 | 298,065 | |

|  |  |
|---|---|
| Total (1931–1932) | 510,326 |

Under sections 12 and 13 of the agreed statement of facts, a one-cent tax has been paid as follows:

By Tri-State, items (1) and (3), total 41,327 gallons.
By Caddo Co., items (2) and (4), total 24,374 gallons.

Aggregating 65,701 gallons,

and leaving a balance of 444,625 gallons on which the one-cent tax still remains unpaid; being the aggregate of the eight items (5) to (12).

Under a decision rendered by the district court which was not appealed from, which decision followed the ruling in State v. Johnson, 173 La. 669, 138 So. 503, the items (9) and (10), aggregating 174,753 gallons used in the interstate trips outside of Louisiana by both companies in 1931, are foreclosed and must be excluded, leaving a balance of 355,573 gallons liable for the 4-cent tax.

And, according to the agreed statement of facts (sections 12 and 13), the Tri-State Company has paid the 4 cents tax on items (1) and (3), aggregating 42,317 gallons (41,327) and items (5) and (7), aggregating 134,964 gallons, and the Caddo Company has paid the 4 cents tax on items (2) and (4), aggregating 24,374 gallons, and on items (6) and (8), aggregating 11,606 (11,596) gallons, thus leaving due and unpaid of the 4 cents tax only items (11) and (12), aggregating 123,312 gallons, still liable for the 4 cents tax.

So that, to sum the matter up, the 1-cent tax has been paid on items (1) to (4), aggregating 65,701 gallons, and is still due and unpaid on items (5) to (12), aggregating 444,625 gallons; and the 4-cent tax has been paid on items (1) to (8), aggregating 212,262 gallons, and is barred under the case above referred to as to items (9) and (10), aggregating 174,753 gallons, thus leaving still due and unpaid the 4-cent tax on items (11) and (12), aggregating 123,312 gallons.

Accordingly, defendant still owes $4,446.25 for the 1-cent tax on 444,625 gallons, items (5) to (12), and $4,932.48 for the 4-cent tax on 123,312 gallons, items (11) and (12).

So that there should be judgment against the defendant company for $9,378.73, together with 20 per cent. penalty thereon and 10 per cent. attorney's fees on the whole.

As the 1-cent tax alone ($4,446.25) with 20 per cent. penalty and 10 per cent. attorney's fees exceeds the amount of the bond given ($5,000), the bond company is without interest in the court's change of opinion (following the decisions of the Supreme Court. of the United States) on the 4-cent tax involved in items (11) and (12).

Our original decree is therefore corrected by fixing the balance due at $9,378.73 instead of $12,444.97, and as thus corrected it is reinstated in all parts and particulars.