184 So. 711

**STATE ex rel. PORTERIE et al. v. GULF, MOBILE & N. R. CO.**

No. 33847.

Oct. 31, 1938.

Gaston L. Porterie, Atty. Gen., and Justin C. Daspit, F. A. Blanche, and E. L. Richardson, Sp. Asst. Attys. Gen., for appellant.

Y. D. Lott, Jr., of Mobile, Ala., and Ott & Johnson, of Franklinton, for appellee.

ODOM, Justice.

We find in the record the following opinion written by the trial judge, in which he states clearly and concisely the issues involved in this litigation, as well as his reasons for judgment. We quote it in full:

"Reasons for Judgment

"The State, through its proper officers, is seeking to collect from the defendant, the Gulf, Mobile & Northern Railroad Company, the state gasoline tax on twenty tank cars of gasoline aggregating 151,697 gallons at 5¢ per gallon, plus an inspection fee, 20% penalty, 10% attorneys fees and cost, a total sum, exclusive of costs, of $10,031.86. It is alleged that this gasoline was imported, or caused to be imported, into the State of Louisiana from the state of Alabama by the defendant railroad company between the 8th day of July, 1931 and the 9th day of January, 1934; that this gasoline was brought to rest in the State of Louisiana; stored in tanks within the State by said railroad, and was later withdrawn from these tanks and distributed and used in the transportation of freight and passengers for hire. It is alleged that the importation of said gasoline into this state in the manner and for the purposes stated constituted said railroad a dealer in gasoline within the meaning of Act No. 6 of the Extra Session of 1928 and Act No. 1 of 1930. Ex.Sess., as amended.

"The defendant railroad denies that it imported any gasoline into this State, except two cars aggregating some 16,050 gallons, for which it deposited and tendered the amount of the tax, less certain claimed deductions. The defendant railroad denies owing any tax on the other gasoline, but avers that said gasoline was imported into this state and used by the New Orleans Great Northern Railroad Company, a separate and distinct corporation. A history and detailed statement of the relationship existing between these two railroad companies is given in the answer.

"There cannot be much dispute as to the facts in this case, which may be summarized in brief about as follows (omitting for the sake of brevity many of the details, in attempting to give only the most salient and important facts):

"In the year 1929, the defendant, the Gulf, Mobile & Northern Railroad Company, having its general offices in the city of Mobile, Alabama, operating a railroad in the states of Alabama, Mississippi, Tennessee with connections to Paducah, Kentucky, acquired 95% of the stock of the New Orleans Great Northern Railroad Company, which was then operating from New Orleans, to Jackson, Mississippi, with branches extending from Slidell to Covington, Louisiana, and from Rio, Louisiana, to Tylertown, Mississippi. After acquiring this controlling stock in the New Orleans Great Northern Railroad Company (which will be hereafter referred to as the N O G N) the Gulf, Mobile & Northern Railroad Company (hereafter referred to as the G M & N), with the permission of the Interstate Commerce Commission, consolidated the offices of the two roads at Mobile, Alabama, under practically the same managerial personnel, the principal executive officers of the G M & N being the executive officers of the N O G N, with a majority of the directors of the former road also directors of the latter. Separate books and accounts were kept of the transactions of the two roads in the same general offices by the same officers and employees of the two roads. Material and

supplies, operating expenses of the two roads, and income from all sources were kept separate on the books of the company, and certain pro rata apportionments were made of the general expenses common to the operation of both roads.

"The roads were operated under this arrangement when, in November 1932, a receiver was appointed for the N O G N on application of its bondholders, the president of the G M & N being named receiver, under whom the operations were continued in much the same manner, except in the name of the receiver, as before the appointment. About July 1, 1933, the property of the N O G N was acquired by a holding corporation named the New Orleans Great Northern Railway Company, composed of the stockholders of the G M & N, and all the property of this concern was leased to the G M & N, which road has been operating the railroad business of the N O G N since July 1, 1933, and from that time the G M & N has been doing business in the state of Louisiana. The last two tank cars of gasoline were brought into the State on August 31, 1933 and Jan. 9, 1934 respectively in the name of and by the G M & N and it is for that reason perhaps that this road has admitted liability and has deposited the tax on these two cars of gasoline by way of a tender of the amount.

"Illustrative of the method by which the others cars of gasoline were brought into Louisiana, we will take the first car, GRCX 4085, July 8, 1931, F. M. Tarut, storekeeper at Bogalusa, Louisiana, of the N O G N, made out a requisition on a blank form bearing the heading of the two roads and numbered N–701, which, after being approved by R. W. Reagan, shop foreman, was sent to H. E. Warren, manager of purchases and stores of both roads at Mobile, Alabama. On July 8, 1931, H. E. Warren entered an order with the Gulf Refining Company, Mobile, Alabama, which order bears the number 43324–NOGN, and instructs the Gulf Refining Company to ship via G M & N, Jackson, Miss., thence N O G N to the New Orleans Great Northern R R c/o F. M. Tarut, S. K. Slidell, La., 1 tank car, approximately 8,000 gallons, 400 end point gasoline, at 4C per gallon, which order was evidently in compliance with the requisition received from the storekeeper at Bogalusa, Louisiana. On the same day, the Gulf Refining Company shipped from Aladocks, Alabama, this tank car of gasoline via G M & N consigned to New Orleans & Great Northern Railroad Co. C/O F. M. Tarout, Storekeeper, Slidell, La., via GM&N Jackson–NOGN Beyond. The Gulf Refining Company rendered an invoice for this car of gasoline to the G M & N which company issued a voucher and check for the price of the car, $318.80. The gasoline was stored in tanks at Bogalusa and withdrawn from time to time for use in the motor and electric cars of the N O G N in the operation of its freight and passenger business. The general offices at Mobile charged this gasoline to the N O G N which company paid for the gas in one of its periodic settlements with the G M & N through these office transactions.

"All of the other cars were handled in practically the same manner (except the

last two as already stated), with the exception that the two cars of 8–26–32 and 10–15–32 instead of being paid for by the G M & N and then charged to the N O G N were paid for directly by the N O G N, and the two cars of 12–17–32 and 5–6–33, were paid for directly by the receiver of the N O G N.

"The matters presented for adjudication by the pleadings and evidence in this case may be divided into and discussed under four heads: (1) Whether or not the defendant railroad company was the importer of the gasoline on which it denies liability; (2)' whether or not defendant has by its ·acts and conduct estopped itself from denying liability; (3) whether or not the tender made by defendant for the last two cars of gasoline was sufficient; and (4) whether or not defendant is liable on the theory that it was the dominant and controlling corporation and liable as such to the state for the obligation of the N O G N for the tax on the gasoline imported into the state by the latter.

"(1) The State seeks to hold the defendant, G M & N R R Co. for the gasoline tax on the theory that this railroad was a 'dealer' in gasoline within the meaning of the law imposing the tax. The pertinent part of the law is contained in Section 2 of Act No. 6 of 1928 (Ex.Sess.), as amended, and the corresponding section of Act No. 1 of 1930 (Ex.Sess.) wherein one definition of a dealer in gasoline is given as follows:

" 'The term "dealer" is further defined to mean the person, firm, corporation or association of persons who imports such gasoline * * * or * * * motor fuel

from any other State or foreign country for distribution, sale or use in the State of Louisiana. On all gasoline * * * or * * * motor fuel imported from other States and used by him, the "dealer" as thus defined shall pay the tax on the amount so imported and used, the same as if it had been sold for domestic consumption.'

"The question then arises in this case: Did the defendant, G. M. & N. Railroad Company, import the gasoline described in the petition from another state (Alabama) into the state of Louisiana for distribution, sale or use in this state? To import means to bring into the state from another state or foreign country.

"During the time the gasoline in question was brought into this State (except the last two cars which are eliminated from this discussion) the N O G N operated a railroad business in the State of Louisiana. The G M & N was not operating any railroad business in its own name in this State during that time nor was it qualified to do business in this State. The gasoline was stored and withdrawn by the N O G N local employees in the operation of its railroad business in Louisiana. These operations were carried on in the name of N O G N R R Company until November, 1932, when a receiver was appointed for this road, after which the business was operated by the receiver in his capacity as such and in the name of this railroad, until the property of this company was sold out in the receivership proceeding about the middle of the year 1933.

"The gasoline in question was ordered by the storekeeper of the N O G N

at Bogalusa, and the order or requisition was sent to the manager of purchases and stores at Mobile who performed the dual function of purchasing agent for both roads. The gasoline was ordered by and in the name of the G M & N from the Gulf Refining Company in Mobile and the cars were consigned to the N O G N at Slidell. The G M & N had no agents or local officers in Louisiana. The gasoline was not received in Louisiana by the G M & N nor stored in tanks by it in this State. Under this situation the N O G N and not the G M & N was the importer of the gasoline.

■ "Not only the wording of the statute but the reason underlying the definition making the importer a dealer implies also that the gasoline imported must be imported for distribution, sale or use by the importer as the law makes provision for deductions on all such gasoline which is re-shipped to points outside the state for use. As the gasoline was shipped to and received by the N O G N at Bogalusa and stored in tanks and subsequently withdrawn for use by this road in the operation of its business, this road must be the dealer insofar as this gasoline is concerned. State v. Tri-State Transit Co., 179 La. 811, 155 So. 233.

■ "It is claimed by the State that under constructions placed upon this statute by the administrative officers of the state in the enforcement of the law, the defendant railroad is the importer under the facts disclosed by the record. If such construction were uniform and consistent and if it fitted the facts in this case, such contention would have great weight, as the courts are loath to disregard a line of construction placed on the statute by the administrative officers charged with the duty of enforcing it. However, an examination of the deposition of Mr. Jno. F. Boyle, Assistant Supervisor of Public Accounts, having charge of the enforcement of this law, does not bear out that contention on the part of the State. (See Deposition of Boyle pp. 26-39.) It will be noticed that the examples which he gives of importers of gasoline, the Grogan Oil Company, Sinclair Refining Company, Magnolia Oil Company, and even the Ouachita Oil & Refining Company were domiciled and doing business in Louisiana, except the latter company, in which case the gasoline was shipped to the oil company itself at points in Louisiana which made this company a dealer and importer of the gasoline to itself. (Dep. p. 35).

"The example given by this witness on the last page of his deposition (p. 39) shows a situation almost exactly like the facts in this case. It was assumed in the question that Company O is engaged in operating a railroad from Baton Rouge, Louisiana to Natchez, Mississippi, and Company O orders a tank car of gasoline from the Brookhaven-Miss. Railroad, a Mississippi corporation, not engaged in business in Louisiana, and this Brookhaven Railroad orders the gas shipped to O at Baton Rouge from the Texas Oil Company, Port Arthur, Texas. The shipment is consigned to Company O at Baton Rouge, which company receives it, puts it in its own tanks and uses it, paying the Brookhaven Railroad for the gasoline, which

latter pays the Texas Company. The question was then asked the witness who was the importer in that case. The answer was, Company O. The question was then asked who was the dealer. The answer was, Company O. Who owed the tax. The answer was Company O. This is conclusive on the question here presented that the N O G N RR Company was the importer, the dealer and the one liable for the tax.

"(2) Plea of Estoppel. On the day of the trial, the State filed a plea of estoppel based on the ground that, even though it is found that defendant was not the actual importer of the gasoline, it cannot now deny liability for the reason that it purposely with-held facts from the state, and did not inform the state that if there was any liability, such liability was on the N O G N. This plea was referred to the merits.

"Several letters were written by the general counsel of the G M & N and the N O G N on letter heads with the names of these two roads printed at the top under which was listed the name of the general counsel. All letters addressed to the defendant by the Supervisor's office were addressed to the Gulf, Mobile & Northern Railroad Co. at Mobile, Alabama, some of them being marked at the top, 'Attention of Mr. J. N. Flowers, General counsel.' The first letter was one coming from the general counsel July 30, 1931 asking for blanks on which to make reports under the gasoline tax law. The Supervisor made demands by letters addressed to the defendant September 1 and September 28th 1931. On October 1, 1931, the general counsel wrote the Supervisor suggesting that the state hold its claim in abeyance until a case then pending in the Supreme Court was decided, (referring to the case of State v. Johnson, 173 La. 669, 138 So. 503, decided November 3, 1931.) The Supervisor on October 2, 1931, answered that the tax was due and again insisting that the penalties would be claimed for failure to pay the tax, but that suit would not be filed against the defendant until the above mentioned case was decided. However, no further action was taken by the State until March 22d, 1932, when another demand was made on defendant for payment of the tax. The general counsel answered this letter by stating that in his opinion no tax was due because we (us) do not use the highways. The words of this letter from the general counsel concluding; 'Hence the tax cannot be collected from us because we do not use the highways.' It does not appear whether by the use of the word 'us' the general counsel meant neither railroad of which he was general counsel. Two other demands were made for payment of the tax by the Supervisor's office by letters addressed to defendant on March 28 and April 27, 1932. On April 29, 1932, the general counsel in answer to the letter of the 27th wrote the Supervisor suggesting that, as they differed as to the interpretation of the law, the State bring a suit for the tax and test it out in the courts. No further action was taken by the State until 1934, after the decision in the case of the State v. Tri-State Transit Company, decided January 2, 1934, 179 La. 811, 155 So. 233.

"Where a person says or does something, or remains silent when he should

speak, with the intention of influencing another to act to his hurt, and the other is injured thereby, such person will be held estopped to change his position when the other seeks to enforce his rights. United States Fidelity & Guaranty Co. v. Putfark, 180 La. 893, 158 So. 9; Taylor Company v. N. Y. & Cuba Mail S. S. Co., 159 La. 381, 105 So. 379. The words and conduct must be of such a nature as would cause a person to take a course that he otherwise would not have taken but for such words and conduct. The words and conduct must have been designed to injure the other by misleading him on some material point. The other person must have acted to his injury by reason of the words and conduct. Admitting for the sake of argument that the conduct of the defendant in this case was for the purpose of misleading the State as to which railroad was liable for the tax, which is not at all proven in the course of the correspondence between the two, the state has not shown that it has been misled to take a different course from that which it would have taken had it known that defendant denied liability on the grounds now urged as a defense. In fact the State in its pleadings and on the trial of the case takes the position that the defendant is the importer of the gasoline even though it was consigned to the N O G N as shown by the testimony. It is not shown that the State would have entered its suit in any other form or at any earlier date had it been advised in advance of the position now taken in the defense. There is no law requiring a defendant to disclose to the plaintiff in advance of the suit all of the defenses which it expects to set up as a defense to a suit.

The defendant here is not responsible for the erroneous information given the Supervisor by the Gulf Refining Company in its report wherein it stated that the G M & N was the consignee of the gasoline whereas the gasoline was consigned to the N O G N. Nor does it appear that the defendant knew that the State had been given this erroneous information.

"The general counsel for defendant and the N O G N suggested to the Supervisor in the letter of April 29, 1932, that a suit be filed to test the liability for the tax. At that time under the decision in the Johnson Case, decided November 3, 1931, there was serious doubt in the minds of the Supervisor and his attorneys, as to whether or not there was any liability for the tax. That is shown by the deposition of Mr. Boyle and from the fact that the Supervisor did not accept the suggestion of the general counsel of defendant to file suit in April, 1932, but took no further action until after the Supreme Court had changed its interpretation of the law in the Tri-State Transit Case, decided in January, 1934. The State does not show either directly or by inference, that a suit would have been filed before July 1933, the date when the N O G N went out of the picture, even though it had known what defense the defendant expected to urge, assuming that the defendant's counsel had such defense in mind at the time, which is not shown to be the case. The plea of estoppel will be over-ruled.

"(3) Tender by defendant for two cars. The defendant, before the trial, deposited and tendered in court the sum

of $889.43, being the tax on the last two cars imported into the State after the defendant had acquired and taken over the operations of the N O G N and had been admitted to do business in this State. These two cars were also consigned to and received by the G M & N and used by it in the operation of the railroad after July 1, 1933. No objection was made to the tender, but it is now urged that same is insufficient, for the reason that a deduction was made of 2,563 gallons of gasoline from these two cars for the reason that it was exported to and used in Mississippi. The evidence shows that this amount of gasoline was exported into the State of Mississippi and used in that state. The act under which the tax is levied specially provides that where the dealer exports the gas to another state for use therein, no tax is due thereon. The failure of the defendant to make a report to the Supervisor within the time prescribed by law, had no other effect than to render the taxpayer liable for the tax, plus penalties and attorneys fees. The defendant has recognized its liability for the tax on the gas imported and used by it in this state and has tendered the tax, plus penalties and attorneys fees, with interest. The State could not have collected any more although a report had been made within the time of the amount of gasoline exported. In my opinion, the tender is sufficient and will be so decreed as to these two cars.

"(4) The State also contends that, even though the defendant is not liable as the importer of the gasoline in question, it is nevertheless liable in this case for the tax as the dominant and controlling corporation, owning practically all of the stock of the N O G N, having the same executive officers, with interlocking directors, and operating the N O G N from the same offices and under the same general systems as an agency and instrumentality of the defendant railroad company.

 "If the pleading permitted a consideration of this question in the case, the contention of the State on this point would present a serious question. It is now the policy of the courts, where the occasion requires, to look beyond the mere technical separate entity of corporations where one corporation, by stock control of another, with interlocking directors, and having the same general executive officers, operates the other corporation as a mere agency or instrumentality of the dominant corporation in the furtherance of the business of the dominant corporation, and as part of one system.

"In such a case, if the subservient corporation incurs an obligation growing out of its operations under this relationship, and the enforcement of that obligation is only available and effective against the dominant corporation, the courts will ignore the fiction of the separate, corporate legal existence of the two corporations and hold the dominant corporation. Chicago, Milwaukee & St. P. R. R. v. Minneapolis Civic & Commerce Association, 247 U.S. 490, 38 S.Ct. 553, 62 L.Ed. 1229; Davis v. Alexander, 269 U.S. 114, 46 S.Ct. 34, 70 L. Ed. 186; Lea v. K. & E. R. R. Co., 131 La. 852, 60 So. 370; Lucey Mfg. Co. v. Oil

City Iron Works, 15 La.App. 12, 131 So. 57.

"However, in this case there is no allegation in the petition which would support evidence in proof of liability on this ground. If the State had intended to pitch its case against defendant and render it liable as the dominant, corporation, it was necessary to allege and prove the necessary facts to show the connection, relationship and methods of operation of the two roads. Not only did the State fail to make these allegations in its petition, but when the defendant filed a motion to require the State to elect if it intended to proceed on this theory or on other grounds set out in the petition, the attorneys for the State declared that they were not proceeding to hold defendant on that theory but were standing on their pleadings.

"It is true the defendant in its answer set out in detail the history of the connection and relationship of the two roads, but that was necessary in setting up its defense on the ground that the N O G N received the gasoline in question and not the defendant. Under Section 4 of Act No. 14 of the Second Extra Session of 1935, where the petition in a tax suit by the State is sworn to by the proper officer or attorney, a prima facie case is made out and the burden then rests on the defendant to show its non-liability for the tax. The defendant was compelled therefore in its answer to show that it was not responsible for the tax, and in doing so was compelled to set out in detail the transactions between the two roads. Testimony was admitted on this point only in support

of that defense. If the State had intended to hold the defendant liable for the acts of the N O G N as the subservient corporation while acting as the instrumentality of defendant, the defendant was entitled to be put on its guard to that effect in order that it might be prepared to meet that issue. It cannot be said that the pleadings were broadened by the evidence admitted on these facts set forth in the answer. Under the pleadings the defendant had a right to assume, and from the statements made by counsel for the State on the hearing of the motion to elect, and no doubt did assume, that it was not called upon to defend the case on that point. This is manifest from the objections made by the defendant during the taking of testimony, particularly the statement of counsel for defendant in the deposition of Hicks, page 26.

"At the time the petition was filed counsel for the State, through no fault of theirs, did not have the correct information as to the facts. The Gulf Refining Company in making its reports to the office of the Supervisor erroneously gave as the consignee of the gasoline the defendant, G M & N, whereas the facts were that the N O G N was the consignee. It is reasonable to assume that, had counsel for the State been in possession of the correct information on this point, the petition would have been drawn differently. The State should not be placed in a disadvantageous position because of this misinformation for which it can in no wise be held responsible.

"A plaintiff failing to establish his case through insufficiency of evi-

dence, or through defects in the pleadings for which the plaintiff is not responsible, which evidence may be supplied later, or which defects may be corrected, should not be concluded by a final judgment. South Louisiana Land Co. v. Waterhouse, 128 La. 458, 54 So. 941. In such a case, the court, in the exercise of its discretion, should enter a non-suit. In my opinion, the State should not be precluded by a final judgment in this case, but a non-suit should be entered as to the disputed items.

"A judgment, therefore, will be entered decreeing the tender made by the defendant for the tax on the two cars of gasoline shipped 8-31-33 and 1-9-34, and releasing the defendant from any further liability thereon; further dismissing the demands of the State for the tax on the other cars of gasoline described in the petition, as in case of non-suit, plaintiff to pay the cost.

"The record was submitted with briefs December 17, 1935, but by agreement of counsel, the court was not required to decide the case within 48 hours as provided for by Act No. 14 of the 2d Extra Session of 1935, § 3.

"Rendered, read and signed in open court at Franklinton, La., December 30, 1935.

"C. Ellis Ott, Judge."

In our opinion, the trial judge has correctly disposed of every point involved in this case. The opinion is clear and concise. We find no fault with it, and for that reason adopt it and make it our own.

There was formal judgment rendered in accordance with the opinion and decree,

which judgment approved the real tender made by defendant as a complete payment and discharge of all defendant's liability on account of the importation of the two tank cars of gasoline described in defendant's motion submitting said real tender. It was further ordered that plaintiff's demands for the tax on the other cars of gasoline described in the petition be dismissed as in case of non-suit, plaintiff to pay all costs of court.

The judgment appealed from is affirmed.

FOURNET, J., dissents.

HIGGINS, J., concurs in the decree.