390 So.2d 539 (1980)
William G. ADAMS, Plaintiff-Appellee,
v.
ASSOCIATES CORPORATION OF NORTH AMERICA, Associates Financial Services of North America, Emmco Insurance Company, Inc. and Capco Adjusters, Inc., Defendants-Appellants.
No. 7807.
Court of Appeal of Louisiana, Third Circuit.
October 8, 1980.
Rehearing Denied December 1, 1980.
Writ Refused January 16, 1981.
Cline, Miller, Richard & Heinen, Larry T. Richard, Rayne, for plaintiff-appellee.
Davidson, Meaux, Sonnier & Roy, M. Candice Hattan, Lafayette, for defendants-appellants.
Before GUIDRY, SWIFT and DOUCET, JJ.
GUIDRY, Judge.
In this suit plaintiff seeks to recover certain "termination pay benefits" allegedly due him under an employment contract. Capco Adjusters, Inc., hereafter Capco, Associates Corporation of North America, hereafter Associates, Associates Financial Services of America, Inc., hereafter Financial, and Emmco Insurance Company, hereafter Emmco, are named as defendants. Following institution of suit a motion for summary judgment filed by all defendants was partially sustained resulting in the dismissal of plaintiff's suit against Financial and Emmco. No appeal has been taken from this judgment.
*540 The trial court, without assignment of written reasons, rendered judgment in favor of plaintiff and against Associates and Capco, in the sum of ONE THOUSAND SEVEN HUNDRED FORTY-EIGHT AND 46/100 ($1748.46) DOLLARS, being the sum stipulated by the parties as the amount of termination pay which plaintiff was entitled to receive should judgment be rendered in his favor. Associates has appealed requesting reversal of the trial court judgment insofar as it casts Associates in judgment. Capco has not appealed and the judgment as to this defendant is now final.
In support of its demand for reversal of the trial court judgment Associates argues that (1) plaintiff did not suffer a termination of employment such as would entitle him to termination pay under the employment contract; and, (2) in any event, he was not an employee of Associates, and at no time did Associates guarantee to assume the obligation of Capco, a totally separate corporation.
The record reflects no genuine dispute as to any of the facts material to a determination of the issues presented.
Capco was an Indiana Corporation and a wholly owned subsidiary of Emmco, also an Indiana Corporation. Emmco, in turn is a wholly owned subsidiary of Associates, a Delaware Corporation.
Plaintiff was initially employed as an adjuster of insurance claims by Capco on February 1, 1965. Plaintiff testified that at the time of his employment, in addition to his salary, he was assured other fringe benefits to be provided by Associates, which included life insurance, hospitalization insurance, retirement benefits, the benefits provided employees under the Associates "Human Resources Policy", and the right to participate in the "Employees' Savings and Profit Sharing Trust" administered by Associates. Plaintiff participated in all of the programs which were made available by Associates to its employees including the retirement program and the Savings and Profit sharing trust. Plaintiff remained constantly in the employ of Capco until August 26, 1977, on which latter date Capco was sold to Markel Service, Inc. The record makes it clear that Capco was sold because it had not been successful in increasing "outside" business and had operated at a loss for a considerable period of time. The transfer of all assets of Capco to Markel, included an agreement by the latter to accept all of Capco's employees for at least ninety (90) days as employees of Markel. Plaintiff was not offered employment elsewhere with Associates or any of its subsidiaries. Accordingly, as of August 26, 1977 plaintiff's employment with Capco ceased and on the following day he went to work for Markel, however, as plaintiff testified, with less benefits and no seniority.
Shortly following termination of plaintiff's employment with Capco, he applied to Associates for the "termination pay benefits" allegedly due him under the Associates "Human Resources Policy" then in effect. Plaintiff's demand in this regard was rejected and this suit followed.
The record reflects that all personnel policies and benefit programs for the several corporations wholly owned either directly or indirectly by Associates were established and administered by Associates. The policies and programs were set forth in a "Human Resources Policy Manual" which was provided to each employee. Among the policies established by Associates as applying to Associates and all its subsidiaries are Policy No. 1405, entitled "Employee Termination Practices"; Policy No. 1415, entitled "Termination Pay"; and, Policy No. 1420, entitled "Reduction in Staff". Copies of these several sections of the policy manual were introduced in evidence by stipulation of the parties, and contain, among others, provisions classifying the several types of employment termination; which of the several types of termination qualify for termination pay; and, a schedule for arrival at the total amount of termination pay due the terminated employee. According to Policy No. 1405 employee terminations are categorized into six general types, i.e.,
"B. Types of Terminations

Terminations are categorized into six general types. The identification of each *541 termination is necessary to insure proper consideration of severance provisions, financial obligations, or re-employment status.

1. Resignation

A resignation is a termination which results from a voluntary personal decision by an employee to leave the employment of the Corporation. There are no severance provisions applicable to a resignation.

2. Release

The release is a termination resulting from a decision on the part of the Corporation to discontinue the employment of an individual because of his refusal or inability to perform the requirements of the position at a level consistent with the standards of the Corporation. Severance provisions may be applicable in a release as specified in Policy 1415.

3. Mutual Release

A mutual release results when an employee, for justifiable reasons, is requested by the Corporation to submit a resignation. Mutual releases are generally with the consent and agreement of the released employee. Severance provisions may be applicable to a mutual release.

4. Reduction in Staff

A reduction in staff occurs when an employee's position or area has been eliminated for economic or other justifiable reasons, and the employee cannot be placed elsewhere in the Corporation. Severance provisions are applicable to reductions in staff.

5. Retirement

A retirement is a termination which results from a voluntary personal decision by an employee to end his career or results from mandatory termination because of the age of the employee. There are no severance provisions applicable to retirement. For information regarding the status and benefits of retired employees, see Retirement Policy # 605.

CLASSIFICATION ELIGIBLE FOR
OF RELEASE TERMINATION PAY
Refusal to transfer Yes
(requiring change in
residence)
Violation of Company No
Policy
Not suited for or Yes
unable to do work
`Other' release To be determined
Reduction in Staff Yes

6. Death
The employee's beneficiary shall be paid as soon as possible, the full salary due the employee through the last day worked plus any unused vacation pay."
Policy No. 1420 defines a "reduction in staff" as follows:
"A reduction in staff, for the purpose of this policy, occurs when an employee's position has been eliminated for economic reasons or as a result of technological or organizational developments."
Plaintiff contends that his employment termination falls under the classification "Reduction in Staff" and he is therefore entitled to severance pay from Capco and Associates. On the other hand Associates contends that it has no obligation whatever to plaintiff as no employer-employee relationship existed between the two and, in any event, plaintiff's termination of employment falls under the classification "other" which vests the employee with no absolute right to severance benefits. We will consider the contentions of Associates in the order set forth above.
UNDER THE CIRCUMSTANCES PRESENT DID THE RELATIONSHIP OF EMPLOYER-EMPLOYEE EXIST BETWEEN PLAINTIFF AND ASSOCIATES?
Associates contends that, although Capco is a wholly owned subsidiary of Emmco which in turn is a wholly owned subsidiary of Associates, the three corporations are separate entitles and therefore the only employer-employee relationship which has been shown is that which existed between Capco and plaintiff. Thus Associates argues plaintiff has no cause of action against it.
*542 Associates argument as set forth above is based upon the well established rule that a corporation is treated as a legal entity separate and distinct in identity from the members who compose it. We acknowledge that this general rule of corporation law prevails in Louisiana. We likewise recognize that this general rule has application where all or a majority of the stock of a corporation is owned by another corporation. As stated in 18 C.J.S. Corporations Section 5j page 374:
"Ordinarily, several corporations retain their distinct identities notwithstanding the fact that they have stockholders and officers in common or that one corporation owns stock in the other."
This general rule is not however, without exception. In many jurisdictions, including Louisiana, the courts have disregarded the separate entity concept where it is established that a corporation has been organized and is controlled, and its affairs conducted, so as to make it merely an instrumentality or adjunct of another corporation, and to do otherwise would work serious injustice to the rights of innocent third persons. As stated in State ex rel. Porterie et al. v. Gulf, Mobile & N. R. Co., 191 La. 163, 184 So. 711 (La.1938):
"It is now the policy of the courts, where the occasion requires, to look beyond the mere technical separate entity of corporations where one corporation, by stock control of another, interlocking directors, and having the same general executive officers, operates the other corporation as a mere agency or instrumentality of the dominant corporation in the furtherance of the business of the dominant corporation, and as part of one system.
In such a case, if the subservient corporation incurs an obligation growing out of its operations under this relationship, and the enforcement of that obligation is only available and effective against the dominant corporation, the courts will ignore the fiction of the separate, corporate legal existence of the two corporations and hold the dominant corporation." (Citations omitted)
This exception to the general rule was recognized in Johnson v. Kinchen, 160 So.2d 296 (La.App. 1st Cir. 1964) wherein the court stated:

"... In such instances, where the branches of a single corporation are separately incorporated but managed by the dominant or parent entity, or have interlocking directorates, the courts have held the dominant or parent corporation liable for the obligations of its branches whenever justice requires protection of the rights of third persons. State ex rel. Porterie v. Gulf Mobile & N. R. Co., 191 La. 163, 184 So. 711, Lucey Mfg. Corporation v. Oil City Iron Works, 15 La.App. 12, 131 So. 57."

We have examined the record in this case in light of the legal principles set forth above and find the following. The objects and purposes of each of the several corporations composing the corporate "family" are closely related. The executive officers of the several corporations are to some extent interlocking. Associates either owns directly or indirectly all of the stock in the several corporations composing the corporate family. The parent corporation, Associates, establishes and administers all personnel policies and programs for the several corporations. If the corporate fiction is not disregarded plaintiff's rights as an employee under the "Human Resources Policy" established and administered by Associates will be seriously prejudiced for following sale of all assets of Capco said corporation was withdrawn as a foreign corporation authorized to do business in Louisiana and has been inactive since September of 1977.
Under these established facts we conclude that invocation of the exception to the general rule is justified and plaintiff should be treated as an employee of Associates, entitled to such rights, benefits and remedies to which he is entitled under the "Human Resources Policy" established by Associates.

IS PLAINTIFF ENTITLED TO SEVERANCE BENEFITS UNDER THE CONTRACT OF EMPLOYMENT?
As we understand appellant's argument it contends that the provisions of the "Human *543 Resources Policy" regarding a reduction in staff are inapplicable because such does not contemplate a situation where all employees of one of the member companies in the corporate family are terminated by reason of the sale of such company, "lock, stock and barrel". Therefore, appellant argues the termination must be considered under the classification "other" in which case management is vested with discretion to disallow severance benefits.
This argument would present a serious question of contract interpretation if the general rule on corporate entities were to be applied. However, for the reasons set forth previously we have concluded that this general rule must be disregarded to the end that all members of the corporate family are considered as one system or organization. Being considered as such the termination of plaintiff's employment, under the circumstances, falls squarely within the provision of the "Human Resources Policy" defined as "Reduction in Staff" which in turn entitles plaintiff to termination pay. Although all employees of Associates directly connected with the operations being conducted by Capco were terminated, other employees of the corporate family were retained. Plaintiff's position as a senior adjuster was eliminated for economic reasons and he was not offered other employment within the corporate family. Under such circumstances he is clearly entitled to termination benefits.
For the above and foregoing reasons the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.
SWIFT, J., dissents and assigns reasons.
SWIFT, Judge, dissenting.
I respectfully dissent as it is my opinion that the plaintiff's termination did not constitute a "Reduction in Staff" of either Capco Adjustors, Inc. or Associates Corporation of North America as defined in the policies of such companies.