No. 2982

Second Circuit

LUCEY MANUFACTURING CORP. v. OIL CITY IRON WORKS

(November 7, 1930. Opinion and Decree.)

D. C. Scarborough, Jr., of Shreveport, attorney for plaintiff, appellee.

Yandell Boatner and Pugh, Grimmet & Boatner, of Shreveport, attorneys for defendant, appellant.

DREW, J. Plaintiff sued the defendant on open account for the sum of $856.71. Defendant admits the correctness of the account sued on, and alleges that the said account was extinguished by compensa-

tion for the reason that, at the time said indebtedness was incurred, plaintiff was indebted to defendant in an amount greater than the amount set forth in plaintiff's petition, and that said debts were therefore mutually extinguished to the amount claimed by plaintiff, leaving a balance due defendant of $155.29, for which amount defendant reconvenes and asks for judgment. It is admitted that the accounts sued on by both plaintiff and defendant are correct, and there is no dispute as to the correctness of either account. The only question in the case is whether or not the account of defendant, being an amount owed by the Lucey Manufacturing Corporation at New York, can be pleaded in compensation of an account due to the Lucey Manufacturing Corporation at Houston, Texas.

Defendant contends that they are one and the same company, and that the Texas company was a mere instrumentality or adjunct of the New York company.

There is a Lucey Manufacturing Corporation at New York, Houston, Tex., Chattanooga, Tenn., Los Angeles, Cal., and numerous other places, as shown by the letterhead used by the New York corporation, the Texas corporation, and the Tennessee corporation, all of which use the same identical heading on the stationery. The stationery used by the plaintiff herein is headed as follows:

"Lucey Manufacturing Corporation
"General Office
"Woolworth Building, New York.
"Branches:     El Dorado, Ark.
"Los Angeles, Cal.  Haynesville, La.
"San Francisco, Cal.  Beaumont, Texas
"London, E. C.    Orange, Texas
"Pittsburg, Penn.   Mexia, Texas
"Tampico, Mex.   Houston, Texas
"Shreveport, La.
."Works:
"Chattanooga, Tenn.  Houston, Texas."

The same letterhead is used by the New York company and the Chattanooga company.

The president of the defendant company testified that defendant had been dealing with the Lucey Manufacturing Corporation for about eight years and had always treated the different Lucey companies as one and did not know that plaintiff contended that it was a separate and distinct concern until the filing of this suit.

The record shows that the Lucey Manufacturing Corporation is incorporated in New York; the Lucey Manufacturing Corporation at Houston is incorporated in Texas; and the Lucey Manufacturing Corporation at Chattanooga is incorporated in Tennessee. It also shows that all of the stock of the Tennessee corporation is owned by the Lucey Manufacturing Corporation of New York, and all of the stock of the Texas corporation is owned by the Lucey Manufacturing Corporation of Tennessee. Therefore, according to our way of reasoning, all of the stock of the Tennessee corporation and the Texas corporation is owned by the New York corporation, as is indicated by the letterhead used by all concerns.

At the time of the filing of this suit, the New York corporation was in the hands of receivers, and the Texas corporation had a short while before been in the hands of receivers. There is filed in evidence the report of the receivers, of date November 1, 1924, filed in the United States District Court for the Southern District of New York. The receivers sign the report as receivers of the Lucey Manufacturing Corporation. The first paragraph of said report, which is admitted by plaintiff to be correct, reads as follows:

"The undersigned Receivers of the above named defendant respectfully submit the following report:

"The Lucey Manufacturing Corporation of New York, the defendant herein (hereinafter called the New York Company), is a New York corporation owning all the capital stock of the Lucey Manufacturing Corporation of Tennessee (hereinafter referred to as the Tennessee Company), the Lucey Manufacturing Corporation of Mexico (hereinafter referred to as the Mexican Company), the General Supply Company and the Grant Tool Company. The Tennessee owns all of the capital stock of the Lucey Manufacturing Corporation of Texas (hereinafter referred to as the Texas Company)."

On page 2 of said receivers' report, we find the following:

"We were appointed receivers of the New York Company on August 17, 1923. A few days before that date receivers had been appointed for the Tennessee company in proceedings in a State Court of Tennessee. Shortly after our appointment receivers were appointed in Texas for the Texas Company and for the North Texas Supply Company. The General Supply Company has continued operations in regular course but on a limited scale. The Grant Tool Company, which operates in California, was, a few months after our appointment as receivers, taken in charge by a local committee of creditors which has been liquidating its assets."

Quoting further from said report, on page 3, we find the following:

"With the approval and active cooperation of the Creditors' Committee and with the approval of this Court, a dismissal of the receivership of the Tennessee Company was arranged on the basis of giving to creditors of that company a two-year mortgage on its fixed assets for $505,851.66, the amount of their claims, junior to a purchase money mortgage previously existing thereon of $35,000.00, the New York company agreeing to subordinate its claim of approximately $375,000.00 to the payment in full of the mortgage debt and to the payment of current indebtedness thereafter created. For a more complete statement of the transactions relating to the Tennessee company, we respectfully refer to the proceedings before this court and the papers relating thereto filed in the office of the Clerk of this Court. A similar arrangement was consummated for dismissing the receivership of the Texas Company pursuant to which the creditors of that company received a nine months' mortgage maturing in January, 1925, for $262,000.00, the amount of their claims, and the New York and Tennessee companies agreed to subordinate their claims against the company to the payment in full of the mortgage debt and current indebtedness thereafter created. The claim of the Tennessee company amounted to approximately $290,000.00 and the New York company to approximately $475,000.00.

"At the conclusion of the proceedings to consider the plan of reorganization the joint Committee requested the Court to authorize the further continuance of the business in the hope that there might be an improvement in conditions that would make a reorganization possible. At that time there was a substantial indication that such improvement was at hand. Unfortunately the improvement has failed to materialize and the operations of the company and its subsidiaries have been continued at substantial loss, as follows:

"Losses from Feb. 29, 1924, the Date of Our Last Report, to August 31, 1924.

| | |
|---|---|
| New York Branch | $63,804.11 |
| California Branch | 10,168.26 |
| Tennessee Company | 20,833.81 |
| Texas Company | 30,053.52 |
| Mexican Company | 24,184.06 |
| General Supply Company | 2,611.80." |

The evidence in the case further shows that a letter written to one branch of the Lucey Manufacturing Corporation would be answered by another branch.

A careful reading of the report of the receivers for the Lucey Manufacturing Corporation, together with the other evidence in the case, convinces us that the plaintiff was a branch of the Lucey Manufacturing Corporation with its headquarters in New York, and that the affairs of the plaintiff were so organized and controlled and its affairs were so conducted as to make it a mere instrumentality or

adjunct of the parent corporation in New York. The New York corporation owned all of the stock of the Tennessee corporation, therefore had complete control of the affairs of the Tennessee company, and the Tennessee company owned all the stock of the Texas company and had complete control of the Texas company, which in turn gives to the New York corporation complete control of both the Texas and Tennessee corporations.

In the case of Hunter v. Baker Motor Vehicle Company (D. C.) 225 F. 1006, 1015, the court said:

"The legal fiction of distinct corporate entity is disregarded, when necessary to do so in order to circumvent fraud, and also when a corporation is so organized and controlled and its affairs are so conducted as merely to make it an instrumentality or adjunct of another corporation. And it matters not how deftly the transaction is concealed by a succession of adjuncts and instrumentalities with corporate names all under one control, nor how many bankruptcies these adjuncts are put through for the benefit and emolument of the real company or corporation, which in fact owns and controls the business. When, as here, these adjuncts are used as mere agents for all purposes, except the payment of their just debts, the liability of the real managing and controlling corporation is neither released nor shifted, unless by some arrangement or agreement made by the creditor with knowledge of the facts, so as to create either an estoppel or ratification. Any other rule, adopted or sanctioned by the courts, not only defeats justice, but opens the door for the perpetration of the grossest frauds."

And in Corpus Juris, volume 14, page 62, we find the following rule laid down:

"The legal fiction of distinct corporate existence may be disregarded in a case where a corporation is so organized and controlled and its affairs are so conducted as to make it merely an instrumentality or adjunct of another corporation."

In Spokane Merchants' Association v. Clere Clothing Company, 84 Wash. 616, 147 P. 414, 416, the court said:

"Courts no longer hesitate to look through forms to substance, and ignore a mere colorable corporate entity, to the end that rights of third parties shall be protected."

In the case of Lea v. Kentwood & E. Ry. Co., 131 La. 861, 60 So. 370, 373, the Supreme Court of this state quoted with approval Morawetz, Private Corporation, pp. 1 and 2:

" 'The word "corporation," ' says a well-known author, 'is a collective name for the corporators or members who compose an incorporated association; and when it is said that a corporation is itself a person, or being, or creature, this must be understood in a figurative sense only. * * * Although a corporation is frequently spoken of as a person or unit, it is essential to a clear understanding of many important branches of the law of corporations to bear in mind distinctly that the existence of a corporation, independently of its shareholders, is a fiction; and that the rights and duties of an incorporated association are, in reality, the rights and duties of the persons who compose it, and not of imaginary beings.' "

The Supreme Court of this state, in discussing this question in the case of Brooks-Scanlon Company v. Railroad Commission, reported in 144 La., page 1091, 81 So. 727, 729, said:

"The Kentwood & Eastern Railroad Company, a Louisiana corporation, was organized December 5, 1905, with a capital stock of $100,000, and the incorporators were Dwight F. Brooks, Anson S. Brooks, Philip R. Brooks, and M. J. Scanlon, all of Minnesota, who were the holders of $99,400 of the stock. There were six shares of stock of $100 each, distributed among six Louisianians. The four persons just named were four of the five individual incorporators of the Brooks-Scanlon Company. The two companies * * * were, to all intents and purposes, the same corporation.

" 'Corporations are intellectual beings,

different and distinct from all the persons who compose them.' C. C. art. 435.

"The law here announces a principle which until translated into practice is rather abstract. When five persons organize themselves into a corporation, or intellectual being, and cause that organization to be acknowledged before two law officers, and call the organization by two or three different names, the intellectual beings are really one and the same. A corporation is technically the owner of the corporate property. But the shareholders are the owners of the corporation. Stockholders, acting unanimously, do what they please with what belongs to them"—citing Cox v. Von Ahlefeldt, 105 La. 543, 588, 30 So. 175; Dilzell v. Lehmann, 120 La. 273, 283, 45 So. 138.

In this same decision, the court quotes with approval from 7 R. C. L. p. 27:

"The doctrine, however, that a corporation is a legal entity existing separate and apart from the persons composing it is a mere fiction, introduced for purposes of convenience and to subserve the ends of justice. This fiction cannot be urged to an extent and purpose not within its reason and policy, and it has been held that in an appropriate case, and in furtherance of the ends of justice, a corporation and the individual or individuals owning all its stock and assets will be treated as identical. * * * Where it (the corporation) is proceeding in equity to assert rights of an equitable nature or is seeking relief on rules or principles of equity, a court of equity will not forget that the stockholders are the real and substantial beneficiaries of a recovery, and if the stockholders have no standing in equity, and are not equitably entitled to the remedy sought to be enforced by the corporation in their behalf, the corporation will not be permitted to recover. Again, corporate existence as an entity distinct from its members may be ignored in order to circumvent the fraudulent purpose of the shareholders in its organization."

Counsel for defendant, in a well-prepared brief, has stated the law of other states of the Union on this subject, as well as the jurisprudence of the United States Supreme Court. We therefore quote from his brief:

"The principle relied upon by the Oil City Iron Works has received frequent treatment from the courts of other states in recent years, and the statement is made in some of the opinions that courts no longer hesitate to look through the mere form and entity of corporations when it is necessary to do so, in order to promote justice.

"We quote from the case of Advance-Rumely Thresher Company v. Geyer, 40 N. D. 18, 168 N. W. 731:

"'The time has passed, or at least is swiftly passing, when courts are confined in their analyses to the mere form and entity of the corporation. Courts will look upon the corporation as a legal entity until sufficient reason arises to look beyond the mere form and entity of the corporation. If the corporation is so organized that it can be used to defeat the rights of innocent parties, defeat public convenience or cut off the right of redress or of action against it, or against other corporations of which it is, in effect, an agent, a court of equity will look through the form of the corporation and examine the substance of it, and if several corporations are organized for a common purpose, it will look through the forms of all such corporations to the substance thereof, and the fact that several corporations are organized to carry out a common purpose will not prevent redress to an injured party, though the corporation which causes the injury or loss claims to have no connection with the general purpose for which the principal corporation is organized. Its legal entity will not alone protect it.'

"In Ross v. Pennsylvania Railroad Company (N. J. Err. & App. 1930) 148 A. 741, the plaintiff's intestate was killed in a grade crossing accident by a train of the West Jersey and Seashore Railroad. The defendant owned the majority of the capital stock of this company. The locomotive and coaches were marked 'Pennsylvania.' 'P. R. R.' appeared on the uniforms of some of the train crew, and the train was listed in the time table of the 'Pennsylvania Railroad System.' Letters were introduced to show that the defendant's claim agent had handled plaintiff's

claim. From a judgment for the plaintiff the defendant appealed, and it was held by the appellate court that the question whether the defendant controlled the train was properly left to the jury, and that its finding would not be disturbed where the facts indicated that the subsidiary was a mere agency of the parent.

"And the following is from Auglaize Box Board Company v. Hinton, 100 Ohio St. 505, 126 N. E. 881:

" 'In determining whether one corporation was the agent, tool, or instrumentality of another, the court may look through forms to substance, and ignore a mere colorable corporate entity. This disposition is shown with increasing firmness as the interests of justice require.'

"Other cases illustrating the point are:

"Erickson v. Minnesota & Ontario Power Co., 134 Minn. 209, 158 N. W. 979; Dillard & Coffin Company v. Richmond Cotton Oil Company, 140 Tenn. 290, 204 S. W. 758; S. G. V. Company of Delaware v. S. G. V. Company of Pennsylvania, 264 Pa. 265, 107 A. 721; Oriental Investment Company v. Barclay, 25 Tex. Civ. App. 543, 64 S. W. 80.

"In the Federal courts the rule is also well established. We quote from the opinion of Judge Trieber, in the case of United States v. United Shoe Machinery Company (D. C.) 234 F. 127:

" 'Whatever may have been the views of the courts in the early days of corporate existence when there were but few corporations and they mostly confined to the business of a quasi-public nature, at this time courts, and especially courts of equity, will look behind the corporate fiction and if it clearly appears that one corporation is merely the creature of another, the latter holding all of the stock of the former, thereby controlling it as effectively as it does itself, it will be treated as the practical owner of the corporation when necessary for the purpose of doing justice.'

"The following is from the opinion in Re Marcella Cotton Mills (D. C.) 8 F. (2d) 522:

" 'If one corporation is wholly under the control of another, the fact that it is a separate entity does not relieve the latter from liability for its acts, and even when one corporation is the owner and proprietor of another, the latter will be regarded as a mere trade name and the real beneficiary cannot resort to the fiction of claiming in the name of the latter to defeat bona fide creditors. * * * As between creditors of an insolvent corporation and stockholders, the policy of the law is always to favor the creditors.'

"Other Federal cases to the same general effect are:

"Bishop v. United States (C. C. A.) 16 F. (2d) page 410; Joseph R. Foard Company v. State of Maryland (C. C. A.) 219 F. 827; Lehigh Valley Railroad v. Dupont (C. C. A.) 128 F. 840; Westinghouse Electric Mfg. Co. v. Radio Craft Co. (D. C.) 291 F. 169; Portsmouth Cotton Oil Refining Corp. v. Fourth National Bank (D. C.) 280 F. 879; Luckenbach Steamship Co. v. Grace & Co. (C. C. A.) 267 F. 676; Gulf, C. & S. F. Co. v. Cities Service Co. (D. C.) 281 F. 214; Clere Clothing Co. v. Union Trust & Savings Bank (C. C. A.) 224 F. 363.

"The rule is also well recognized by the Supreme Court of the United States. In Chicago, Milwaukee & St. Paul R. R. Co. v. Minneapolis C. & C. Association, 247 U. S. 490, 38 S. Ct. 553, 62 L. Ed. 1229, the Court, at page 1237 of the Law Edition, after referring to the emphasis laid upon some of its former decisions to the general effect that an identity of stock ownership alone does not create an identity of corporate interest between two companies, goes on to say:

" 'While the statements of the law thus relied upon are satisfactory in the connection in which they are used, they have been plainly and repeatedly held not applicable where stock ownership has been resorted to not for the purpose of participating in the affairs of the corporation in the normal and usual manner but for the purpose, as in this case, of controlling a subsidiary company so that it may be used as a mere agency or instrumentality of the owning company or companies. Citing cases. In such a case the courts will not permit themselves to be blinded or deceived by mere forms of law, but regardless of fictions will deal with the substance of the transaction involved as if the corporate agency did not exist, and as the justice of the case may require.'

"In Hart Steel Company v. Railroad Supply Company, 244 U. S. 294, 37 S. Ct.

506, 61 L. Ed. 1149, there was involved the question of whether a judgment against a subsidiary corporation in a patent infringement suit was res adjudicata against the parent corporation. The doctrine of res adjudicata was held to be applicable, the court using the following language during the course of its opinion:

" 'There can be no doubt from the record before us that the Elyria Company owned all of the capital stock of the Hart Company; that the latter company was a mere sales agent of the former; that Wood was the salaried manager of the latter; that both the Hart Company and Wood were agents, subject to the control of the Elyria Company, and that in selling the tie plates and as defendants in the litigation they acted wholly under the authority and in the interest of their principal. Identity of interest could not be greater or closer than it was between the defendants in the two cases—they represented precisely the same single interest, and the Hart Company and Wood, as agent of the Elyria Company, were obviously and necessarily privies to the judgment rendered in its favor in the Circuit Court of Appeals for the Sixth Circuit.' (Citing cases.)

"A late case is that of Davis, Agent, v. Alexander, 269 U. S. 115, 46 S. Ct. 34, 70 L. Ed. 17, where Mr. Justice Brandeis, in writing the opinion of the court, states the rule to be that where one railroad company actually controls another and operates both as a single system, the dominant company will be liable for injuries due to the negligence of the subsidiary company."

Under the facts of this case and the law applicable thereto, we necessarily will have to reverse the finding of the lower court.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be reversed and the demands of plaintiff be rejected as having been extinguished by compensation; and it is further ordered, adjudged, and decreed that the defendant in reconvention do have judgment against the plaintiff in the sum of $155.29; and for all costs.