160 So.2d 296 (1964)
E. L. JOHNSON
v.
Leonard K. KINCHEN et al.
No. 6052.
Court of Appeal of Louisiana, First Circuit.
January 27, 1964.
*297 Pittman & Matheny, by Iddo Pittman, Jr., Hammond, for appellant.
Ponder & Ponder, by L. B. Ponder, Jr., Amite, for appellees.
Before ELLIS, LOTTINGER, HERGET and LANDRY, JJ.
LANDRY, Judge.
Plaintiff, E. L. Johnson, instituted this suit against Leonard Kinchen, individually, and Leonard Kinchen Logging Co., Inc., a corporation, praying for judgment against said defendants, in solido, for workmen's compensation benefits in the sum of $35.00 per week, not exceeding 400 weeks, for alleged total permanent disability resulting from an accident sustained by petitioner who was engaged in hauling logs for defendant corporation. In answer to plaintiff's complaint, defendant, Leonard Kinchen Logging Co., Inc., filed a third party demand against Key Life Insurance Company seeking judgment, for the use and benefit of plaintiff, E. L. Johnson, in the sum of $25.00 weekly, for 100 weeks, upon an employee's insurance policy (as distinguished from a policy of workmen's compensation insurance). In the court below the third party demand of defendant corporation was pretermitted and deferred to a separate suit which was then consolidated with the instant matter for trial.
After trial of these consolidated causes below, judgment was rendered herein in favor of plaintiff, E. L. Johnson, against defendant corporation, Leonard Kinchen Logging Co., Inc., for compensation at the rate of $35.00 weekly, not exceeding 400 weeks, and in favor of defendant, Leonard Kinchen, rejecting and dismissing plaintiff's demand as to said respondent, individually. In the companion case initiated upon the third party demand of defendant, Leonard Kinchen Logging Co., Inc., judgment was rendered in favor of plaintiff, the issue therein being whether plaintiff herein, Johnson, was an employee of said corporation or an independent contractor.
The appeal before us is that of plaintiff, Johnson, who herein complains our learned colleague below erred in dismissing and rejecting appellant's claim against defendant Leonard Kinchen, individually, and allowing the aforesaid corporate defendant credit in the sum of $2,665.90 against the amount of compensation adjudged due appellant.
The nature and extent of plaintiff's injuries are conceded as is the fact that he is entitled to the compensation awarded by the trial court. The sole issues before the court, therefore, are whether appellant is entitled to judgment against defendant, Leonard Kinchen, individually, and the propriety of the credit allowed by defendant corporation.
Appellant's claim against defendant Kinchen, individually, is predicated on the admitted circumstance that said defendant was president and manager of the corporation known as Leonard Kinchen Logging Co., Inc., the only shareholders of said *298 corporate entity being defendant, his wife and one of his sons. It is the contention of esteemed counsel for appellant that where an individual owns such control of the stock, (in the instant case all shares excepting a minimal number owned by defendant's wife and son), that the acts of the corporation are his own, then he may not use the corporate entity as a screen to shield or insulate himself from personal liability for the debts and obligations of the corporation.
In support of his position, able counsel for appellant relies heavily upon the rule, and the cases cited as authorities therefor, reiterated in the following language appearing in Brown v. Benton Creosoting Co., La.App., 147 So.2d 89:
"* * * As was stated in Keller v. Haas, [202 La. 486, 12 So.2d 238] supra:
"`It is well settled that where an individual forms a corporation of which he is the sole and only stockholder or owns such control of the stock that the act of the corporation is his own, then he may not use the screen of corporate entity to absolve himself from responsibility. Lindstrom v. Sauer, La.App., 166 So. 636; Alliance Trust Co. v. Streater, 182 La. 102, 161 So. 168; Superior Oil Co. v. Baltar, 181 La. 908, 160 So. 626; Wilson v. Lagasse, 12 La.App. 704, 127 So. 17; Heard v. Monroe Sand & Gravel Co., 9 La. App. 568, 121 So. 642; State v. F. B. Williams Cypress Co., 131 La. 62, 58 So. 1033.'
"In the case of Mayo v. Pioneer Bank & Trust Company [5 Cir., 274 F.2d 320], supra, the court stated:
"`* * * The corporation law of Louisiana is no different from the corporation law of all the other states in general recognition of a corporation as a separate entityfor purposes of convenience and to serve the ends of justice. But when the corporate fiction is a mere simulacrum, an alter ego or business conduit of an individual, it may be disregarded in the interest of securing a just determination of the action. See 13 Am.Jur., Corporations, § 7; 1 Fletcher Cyclopedia Corporations § 41 (1931); Latty, The Corporate Entity as a Solvent of Legal Problems, 34 Mich.L.Rev. 599 (1936), to cite just one of many law review articles on the subject; the cases collected in the annotations, 1 A.L.R. 610, 34 A.L.R. 597, 63 A.L.R.2d 1051; and, Keller v. Haas, 1943, 202 La. 486, 12 So.2d 238 and Lindstrom v. Sauer, La.App.1936, 166 So. 636 to cite but two Louisiana cases for the general principle involved. Here especially, when the Court is exercising the traditional equity powers of a court of bankruptcy, we will not permit justice to be frustrated by a fiction that in this case defies common sense and has ceased to have value as a convenient legal tool subserving justice.'" (Emphasis supplied by the Court.)
The hereinabove quoted language from the Brown case, supra, particularly the emphasized portion thereof, is not an unqualified rule of law but rather, on the contrary, represents a well recognized exception to the general rule. Both the general rule and the exception which appellant herein advocates, will be hereinafter discussed together with the authorities relied upon by able counsel for appellant. Prior to such discussion, however, it is to be noted that the Brown case, supra, concerns multiple corporations having identical ownership. In such instances, where the branches of a single corporation are separately incorporated but managed by the dominant or parent entity, or have interlocking directorates, the courts have held the dominant or parent corporation liable for the obligations of its branches whenever justice requires protection of the *299 rights of third persons. State ex rel. Porterie v. Gulf Mobile & N. R. Co., 191 La. 163, 184 So. 711, Lucey Mfg. Corporation v. Oil City Iron Works, 15 La.App. 12, 131 So. 57.
In the Brown case, supra, the court pointed out that the corporation therein involved ceased to operate as a corporate entity from its very inception. We note therein the following language:
"* * * no meetings of the shareholders or directors were held after the organizational proceedings were had. No bank account was maintained by the corporation, but all receipts, whether by check or cash, were remitted to and deposited in the account of Kennedy Sawmills, Inc. * * *. The books of the corporation were kept in the office of Kennedy Sawmills, Inc., whose checks paid the operating expenses of the corporation, for, as stated, the corporation maintained no bank account.
* * * * * *
"The funds of the corporation and Kennedy Sawmills, Inc., were completely commingled. One endorsement stamp served the purpose of endorsing all checks for deposit, whether received in the name of John E. Kennedy, Kennedy Wood Farms, Kennedy Supply Company, Inc., Kennedy Sawmills, Inc., or Benton Creosoting Co., Inc. The business of the corporation approximated one-fourth of all the business of the Kennedy interests cleared through the Kennedy bank account. The checks in payment of two weeks' compensation due plaintiff were drawn upon and paid by Kennedy Sawmills, Inc."
The general rule applicable to the question herein posed is stated in 18 C.J.S. Corporations §§ 580 and 581, pages 1306-1308, as follows:
"§ 580. General Rule
"Except under special circumstances, the stockholders are not liable for the transactions or debts of the corporation. * * *"
"§ 581. Sole and Majority Stock-holders
* * * * * *
"An individual may incorporate his business for the sole purpose of escaping individual liability for the debts of the corporation, and the fact that one owns a majority of the stock in a corporation does not, of itself, make him liable for the transactions of the corporation, or for its debts; and, in theory of law, although all the shares pass into the hands of one person, yet so long as the corporate existence is maintained, the liability of this one person as a stockholder and his immunity from such liability are the same as where there are many stockholders. * * *"
We quote approvingly the rule in this state as announced in Buckeye Cotton Oil Co. v. Amrhein, 168 La. 139, 121 So. 602, to-wit:
"* * * for the rule of law is that a corporation continues to exist as a separate legal entity until legally dissolved, and the corporation and its shareholders are not one and the same, even though the number of shareholders be reduced to one. (Cases cited.)"
Obviously the useful and beneficial role of the corporate concept in the economic and business affairs of the modern day world would be destroyed if the rule of freedom from individual liability for corporate obligations did not obtain. The protection of limited liability for venture or investment capital is essential to the efficient operation of a system of free enterprise. Such protection from individual liability encourages and promotes business, commerce, manufacturing and industry which provides employment, creates sales of goods and commodities and adds to the nation's economic and financial growth, stability and prosperity.
*300 As beneficial as the rule is, however, to our nation's economy, it must be conceded the rule is not without exception. In the instant case we are concerned with the applicability of the facts revealed by the record in the instant case to the exception to the above stated general rule set forth in 18 C.J.S. Corporations § 581, pages 1307-1308, and 18 C.J.S. Corporations, § 6, pages 376-378, as follows:
18 C.J.S. Corporations § 581, pp. 1307-1308:
"However, this immunity was created for certain legitimate purposes and it should not be permitted for purposes that are not legitimate, and the sole stockholder or practical owner of a corporation may be liable for the transactions of the corporation. * *"
18 C.J.S. Corporations § 6, pp. 376-378:
"It is clear that a corporation is in fact a collection of individuals, and that the idea of the corporation as a legal entity or person apart from its members is a mere fiction of the law introduced for convenience in conducting the business in this privileged way. It is now well settled, as a general doctrine, that, when this fiction is urged to an intent not within its reason and purpose, it should be disregarded and the corporation considered as an aggregation of persons, both in equity and at law.
"As is shown in § 7b infra, fraud is a common ground on which the courts will ignore the corporate structure, but actual fraud is not necessary. In addition to actual fraud, the courts will discard the corporate fiction whenever its retention would produce injustices and inequitable consequences.
"Nevertheless, as observed in § 4 supra, a corporation ordinarily is to be regarded as a separate entity, distinct from the members who compose it, and such entity will be disregarded only when there are controlling reasons. It must appear not only that the corporation is controlled and influenced by one or a few persons, but, in addition, it is necessary to demonstrate that the corporate cloak is utilized as a subterfuge to defeat public convenience, to justify wrong, or to perpetrate fraud. * * *"
We shall proceed to review the cases cited by esteemed counsel for appellant in support of the contention the court is herein justified in ignoring the corporate existence and holding defendant, Leonard Kinchen, individually liable for the debts of respondent corporation.
In State v. F. B. Williams Cypress Co., 131 La. 62, 58 So. 1033, the question was whether the officers of a corporation could be held personally responsible for ultra vires and illegal acts. There the officers of the corporation entered into a contract for the corporation, which contract on its face revealed it was of such nature as to preclude its corporate execution because of its contravention of a statutory provision. Under such circumstances the court held the other party to the agreement was chargeable with notice of the officers' lack of authority to so bind the corporation and therefore exonerated the officers of personal responsibility. The aforesaid authority is clearly inapplicable herein considering plaintiff in the instant case does not contend that defendant Kinchen, as an officer of the corporation, has attempted to perform any ultra vires or illegal act.
In Wilson v. Lagasse, 12 La.App. 704, 127 So. 17, it was held that where an individual organizes a corporation and transfers his business assets to the new corporation, such corporation is liable for the debts incurred in the same business of the incorporator. (There was no attempt to hold the principal stockholder for debts of the corporation, as in the present case.) Virtually identical to the Wilson case are Heard v. Monroe Sand & Gravel Co., 9 La.App. 568, 121 So. 642, and Alliance Trust Co. v. Streater, 182 La. 102, 161 So. 168.
*301 Similarly, in Superior Oil Co. v. Baltar, 181 La. 908, 160 So. 626, where non-resident heirs of a deceased person accepted his succession and, in an effort to avoid payment of decedent's debts, transferred the Louisiana real estate of the succession to a corporation which they organized for the purpose, the court held the creditors of the succession were entitled to a pledge on succession property, and had a cause of action against the corporation as well as the heirs individually. (In this same matter, suit against the non-resident heirs was dismissed on exception to the court's jurisdiction ratione personae.)
In Keller v. Haas, 202 La. 486, 12 So.2d 238, although cited in a number of the other cases, a completely different question was presented, because there was no question in that case of the identity of obligations as between a corporation and its principal stockholder. That case merely holds that with respect to the rights of a co-owner to redeem property acquired by the principal stockholder and general manager of a corporation at tax sale and subsequently transferred to the corporation by said principal stockholder, the corporation cannot be considered an innocent purchaser on the faith of the public records. The reason for such a rule should be too obvious to require a review of the law governing the redemption by co-owners of property sold for taxes.
In Lindstrom v. Sauer, La.App., 166 So. 636, the corporation of which defendant was the principal stockholder and manager sold its business, including its good will, to the plaintiff. Nevertheless, defendant continued his old business using the name of the corporation whose good will had been sold.
The court therein said:
"* * * in the case at bar, Sauer had previously formed a corporation for his convenience, and, after conveying the good will of that corporation, seeks to cover behind the corporate veil in respect to his personal liability, where he has by his actions deprived the plaintiff of certain acquired rights which plaintiff, by virtue of his purchase, was entitled to enjoy.
"The principle of the law, however, is the same, and we believe it to be a wholesome one, that a person who incorporates himself for convenience, being in truth the sole owner of the corporation, and who conveys the good will of that corporation, may not thereafter, in answer to a suit resulting in damage by virtue of his personal wrongdoings, cloak himself behind the alleged corporate entity to shield himself from personal responsibility. In such cases, particularly where deception is averred, the court must look to the substance rather than to the form.
"Moreover, in the case at bar the plaintiff has alleged that the defendant is guilty of acts constituting unfair practice and competition, which, aside from the allegations with reference to the existence of the corporation for convenience, entitle him to recover if he proves his case.
* * * * * *
"* * * the defendant owed to the plaintiff the duty of not using the name of the corporation in such manner as to deprive the plaintiff of the good will which the plaintiff had in good faith purchased.
* * * * * *
"It is said, in Cooley on Torts, vol. 2, p. 359, that: `To steal or to injure the good will of a business by any species of deception is a wrong which will be redressed by remedies appropriate to the circumstances.'"
The court then refrained from deciding whether the cause of action was ex contractu or ex delicto upon the theory that in either case defendant was personally liable. However, assuming that in the Lindstrom case there was a cause of action *302 individually against the stockholder on the contract of the corporation, it is nevertheless distinguishable, because deception and fraud were alleged and shown.
In the present case there is no question of fraud or deception.
Furthermore none of the characteristics of the Brown case appear in the present case. According to the testimony of Mr. M. J. Daigle, accountant, who has practiced the profession in Hammond since 1948, Mr. Kinchen, a man of limited education, had been engaged in the logging business, the dairy business, and other enterprises. Mr. Daigle, who kept Mr. Kinchen's personal books as well as the corporation's books in his own office, testified Mr. Kinchen had completely divorced the logging business from his other operations when he incorporated. Kinchen was carried on the books of the corporation as president, and he received a salary. The only logging operations undertaken were performed by the corporation. Daigle stated that when the corporation was formed, Mr. Ourso (presumably the attorney of record for the corporation, although this is not made clear), owned some shares in the corporation and was its vice-president. Mr. Kinchen was secretary-treasurer. Subsequently Mr. Ourso sold his shares to Mr. Kinchen's son. Mr. Daigle also stated that Mrs. Kinchen wrote the checks and kept the daily records which were later delivered to him once a month for posting. All returns to the Louisiana State Department of Employment Security and to the U. S. Internal Revenue Service on the logging operations were made in the name of the corporation. There was no commingling of funds.
Mr. Kinchen testified he had been in the logging business for eight or ten years, and had incorporated the business three or four years prior to the date of the trial. (This was one or two years before plaintiff was employed.) He stated that prior to incorporation he was in the "tie" business and changed over to logging when he incorporated. Plaintiff was paid by checks drawn on the corporation account.
According to Mr. Daigle, since the date of the accident the corporation had ceased its logging operations, but continued to receive income from the rental of its equipment.
The record in the instant case does not reflect the number of corporate shares owned by defendant's son. Nor is there any evidence of record to justify a finding of fraud, deception or other ill practice on the part of defendant, individually, to justify invocation of the exception to the general rule applicable herein. So far as the record shows, defendant corporation was bona fide and legitimate in every respect. It is likewise clear appellant was employed solely by the corporation. It follows, therefore, the corporation is solely responsible to appellant for workmen's compensation benefits due. Accordingly, the judgment of the trial court dismissing appellant's demand against defendant, Leonard Kinchen, individually, will be affirmed.
The appeal, however, from that portion of the trial court's judgment granting defendant corporation credit in the sum of $2,665.90 against workmen's compensation benefits awarded appellant, is another matter. Defendant corporation, separately represented in the trial of the case below, did not file a brief in this court and neither did it orally argue its cause before us. Consequently, we do not have the benefit of its contentions in support of the credit allowed by the trial court as an off-set to the judgment rendered in favor of appellant.
The pleadings herein show that plaintiff admits receiving $30.00 monthly as compensation payments. The amended answer of defendant corporation alleges payment of compensation in the aggregate of $2,665.90.
In support of its claim for credit, defendant corporation introduced in evidence a large number of cancelled checks *303 which, our consideration thereof reveals, may be grouped as follows: (1) two checks payable to Hammond Motors Inc. and nine checks payable to Universal C.I.T.; (2) twelve checks payable to E. L. Johnson most of which bear the notation "Lent", or "Loan"; and (3) thirteen checks issued during the period of plaintiff's employment preceding his injury, payable to E. L. Johnson bearing the inscription "wages", "hauling logs" or "rent on truck". The latter group of thirteen checks merely show that while plaintiff was employed he was paid by the corporation and not by defendant Kinchen individually. This latter group of checks representing payment of wages earned by plaintiff during his period of employment by defendant corporation, it is clear beyond doubt said defendant was not entitled to credit therefor.
Considering the twelve checks payable to E. L. Johnson, it is readily apparent the notation "loan" or "lent" appears on all but onethe notation on the remaining check being undecipherable, which circumstance is of no moment, however, in view of plaintiff's admission in his petition to the effect he received these amounts as compensation. Defendant having properly plead compensation or set-off and appellant having acknowledged receiving the sum of these payments as compensation, credit for the sum of these checks which total $443.00 should be allowed. In this regard we note plaintiff in brief reaches a total of $413.00 which error results from appellant omitting check No. 2525 in the sum of $30.00.
The checks payable to Hammond Motors, Inc. and Universal C.I.T. in the aggregate of $1,503.45 represent payments made by defendant corporation on plaintiff's debt for the purchase price of a log truck owned by plaintiff and used by him in the work performed for defendant corporation. These checks were issued by the corporation to meet monthly installments maturing on plaintiff's truck following plaintiff's injury.
It is uncontradicted in the record that following appellant's disabling accident, defendant corporation retained plaintiff's truck and used it in said defendant's logging operations. The extent of such use is in dispute between the litigants. Likewise there is disagreement between the parties regarding whether plaintiff requested the corporation to assume the installments maturing following plaintiff's injury and also whether there was an agreement or understanding between the parties with regard to the corporation paying plaintiff rental for the use of his truck. There is not the slightest doubt, however, that the corporation did make the payments for plaintiff's account, and therefore, under the pleadings has a right to reimbursement therefor by way of off-set or credit as against the amount due appellant.
On the other hand, appellant maintains he is entitled to remuneration for the use of his truck by the corporation which claim is vigorously resisted by defendant corporation. Unfortunately the record does not contain sufficient evidence upon which this particular controversy might be resolved. We feel, therefore, the ends of justice will be met by fully reserving to appellant the right to institute action against defendant corporation for recovery of any and all sums reputedly due appellant by said appellee as rental on appellant's truck for such use thereof as appellee may have made following appellant's injury.
Accordingly, it is ordered, adjudged and decreed the judgment of the trial court be and the same is hereby amended by reducing the amount of credit or off-set due defendant, Leonard Kinchen Logging Co., Inc., as against the judgment rendered below in favor of appellant, E. L. Johnson, from the sum of $2,665.90 to the sum of $1,946.45, and reserving to plaintiff-appellant, E. L. Johnson, the right to institute action against defendant-appellee, Leonard Kinchen Logging Co., Inc., for recovery of any amount due appellant by said appellee *304 as rental for the use of appellant's truck subsequent to the date of appellant's injury, namely, May 5, 1959.
Amended and affirmed.
REID, J., recused.