956 So.2d 192 (2007)
TOWN OF HAYNESVILLE, INC., Plaintiff-Appellee
v.
ENTERGY CORPORATION and Entergy Louisiana, Inc., Defendants-Appellants.
No. 42,019-CA.
Court of Appeal of Louisiana, Second Circuit.
May 2, 2007.
*193 Kenneth P. Carter, Margaret J. Savoye, New Orleans, The Boles Law Firm, by Michael L. Dubos, Monroe, for Appellants.
Colvin, Weaver & Cerniglia, by: James H. Colvin, Charles E. Weaver, Shreveport, for Appellee.
Before STEWART, GASKINS and DREW, JJ.
STEWART, J.
Entergy Louisiana (ELI) appeals the trial court's finding that it was a single business enterprise for the purpose of triggering a Most Favored Nation agreement *194 requiring it to pay increased franchise fees to the city of Haynesville. Because we find that the trial court erred in its determination of the existence of a single business enterprise, and for the reasons more fully discussed below, we reverse the judgment.

FACTS
This matter involves a franchise fee dispute between the Town of Haynesville and Louisiana Power & Light Company (LP & L), also later known as Entergy Louisiana (ELI), in which Haynesville alleged that it is entitled to higher franchise fees based on the terms of a Most Favored Nation ("MFN") side letter agreement. The issue before this Court relates to the interpretation and application of the triggering condition for ELI's obligation to pay a higher fee pursuant to the MFN side letter agreement.
LP & L has provided electric service to much of north and southeast Louisiana for nearly 60 years. In the municipalities that LP & L has served, it has obtained franchises giving it various rights, including the right to use the streets and public ways of the municipality to provide electric service to service locations within the municipality. These long term agreements support the capital investment needed to supply service.
On January 15, 1985, LP & L entered into a franchise agreement with the Town of Haynesville. The franchise granted LP & L the right to supply electric service to Haynesville for twenty-five years in exchange for a franchise fee of 2% of the gross receipts from the sale of electric service for retail and commercial purposes within Haynesville. Haynesville also wanted the right to increase its 2% fee in the event that LP & L ever contracted to pay a higher fee to another municipality. As a result, the parties entered into a side letter agreement containing a "Most Favored Nation" clause that provided:
As part and portion of the consideration for the franchise renewal contract granted by the Town of Haynesville to Louisiana Power and Light Company (the "Company") . . . the Company does hereby further agree, that in the event the Company contracts with any other town or municipality in the renewal of its franchise contracts to pay as a franchise fee more than two (2%) percent of the gross receipts of the Company from the sale of electric service . . . the Company will increase the franchise fee more than two (2%) percent of gross receipts of the Company from the sale of electric service . . . the Company will increase the franchise fee paid to the Town of Haynesville. (Emphasis added)
At the time the side letter was executed, LP & L's sister operating companies, AP & L, MP & L, and NOPSI had franchise or similar agreements relating to the locations that they served. These arrangements vary in their terms and conditions, including the amount of the fee to be paid.
A history of Entergy and LP & L would be useful at this point. Middle South Utilities, Inc. (MSU) was formed in 1949 as a "public utility holding company" under the Public Utility Holding Company Act of 1935 (PUHCA). As a holding company, MSU owned 100% of the common stock of four subsidiaries, Arkansas Power and Light Company (AP & L), Mississippi Power and Light Company (MP & L), Louisiana Power and Light Company (LP & L), and New Orleans Public Service, Inc. (NOPSI). In 1963, MSU formed a service company to provide certain services for these companies.
MSU changed its name to Entergy Corporation on May 19, 1989. In 1992, Entergy announced its plans to acquire Gulf States Utilities, Inc. (GSU), a public *195 utility company serving southwest Louisiana and southeast Texas. In 1996, each of the five subsidiaries changed their names to signify their affiliation with Entergy and their geographical and jurisdictional separateness.
Now turning to the instant case, Haynesville instituted this suit alleging that ELI breached its franchise agreement with the Town by failing to pay a franchise fee of 3% of the gross receipts from sales of electricity because ELI paid the City of West Monroe a franchise fee of 3% and by failing to pay to the Town a 5% franchise fee that had been traditionally paid by GSU.
On July 11, 2001, Haynesville filed a motion for summary judgment on its 3% claim. The trial court granted the Town's motion. ELI appealed. On January 31, 2003, this Court affirmed the decision of the trial court. On March 29, 2005, the trial court addressed the merits of the Town's 5% claim against ELI. The trial court determined that MFN agreement is ambiguous, that Entergy is a single business enterprise, and that the Town is entitled to receive the 5% franchise fee paid by Energy Gulf States, Inc. to the municipalities it serves. ELI filed a motion for new trial which was denied. This appeal ensued.

DISCUSSION
Contractual Interpretation
The interpretation of a contract is the determination of the common intent of the parties with the courts giving the contractual words their generally prevailing meaning unless the words have acquired a technical meaning. La. C.C. arts. 2045, 2047; Campbell v. Melton, 2001-2578 (La.5/14/02), 817 So.2d 69. A doubtful provision must be interpreted in light of, inter alia, the conduct of the parties before and after the formation of the contract. La. C.C. art. 2053. Contract interpretation of ambiguous terms requires construction against the contract's drafter. La. C.C. art. 2056; Campbell v. Melton, supra. Factual findings which are pertinent to the interpretation of a contract will not be disturbed absent manifest error. Campbell v. Melton, supra; Murray v. German Mut. Ins. Co., 37,697 (La.App. 2 Cir. 9/24/03), 856 So.2d 81, writ denied, XXXX-XXXX (La.2/13/04), 867 So.2d 698.
Entergy contends that the MFN letter agreement is not ambiguous and should be enforced as written. When the words of a contact are clear and do not lead to absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046. The determination of whether a contract is clear or ambiguous is a matter of law. Custom-Bilt Cabinet & Supply, Inc. v. Quality Built Cabinets, Inc., 32,441 (La. App. 2d Cir.12/8/99), 748 So.2d 594.
In conjunction with the January 15, 1985, franchise renewal, Haynesville negotiated a side letter agreement with a "Most Favored Nation" clause. The only parties mentioned in the MFN agreement are Haynesville and LP & L. The term "company" used in the contract refers to no entity other than LP & L. The triggering event for the MFN clause is described explicitly as "the Company" contracting with another town or municipality in the renewal of its franchise for a fee exceeding 2% of the gross receipts of electric sales. Despite the fact that in January 1985, LP & L had a parent corporation and subsidiary corporations, no words are used to expand the triggering event beyond LP & L's contracting with another town or municipality in the renewal of LP & L's franchise fee.
The trial court erred in its determination that the MFN clause is ambiguous *196 in that "it does not provide for what is intended in the event the obligor, Louisiana Power and Light changes ownership, changes names, or through the actions of a parent or affiliated company, pays a franchise fee of greater than 2% to some other municipality." We find that the trial court erred with respect to this finding on several fronts.
First, a change in the name of a corporation has no effect on the rights and obligations of the parties to an agreement. See Pro Source Roofing, Inc. v. Boucher, 36,269 (La.App. 2d Cir.7/24/02), 822 So.2d 881 citing Alley v. Miramon, 614 F.2d 1372 (5th Cir.1980). Thus, the absence of a provision in the contract that addresses what happens if LP & L changes its name is irrelevant and creates no ambiguity in the agreement.
Second, the agreement is not ambiguous because it does not state what is intended should LP & L change ownership. When ELI entered into its franchise agreement with Haynesville in 1985, it was owned by MSU. After MSU changed its name to Entergy in 1988 and LP & L changed its name to ELI in 1996, neither activity changed the ownership of LP & L.
Finally, the payments of a 5% fee by LP & L to another municipality that it serves cannot serve as the basis of the Town's claims. Instead, the Town's claims are based upon the payments of 5% by GSU to municipalities served by GSU. There is no evidence that a parent or affiliate paid on behalf of LP & L any franchise fee to any municipality in the renewal of its franchise served by LP & L in greater percentages than received by Haynesville. There is simply no ambiguity relating to the fact that LP & L must contract to pay a franchise fee higher than 2% in order to trigger the obligations of LP & L in the renewal of its franchise contracts. (Emphasis added) This instant situation does not present such a scenario. The language of the contract is clear and unambiguous. Thus, we hold that the trial court's determination that the contract was ambiguous was in error.
Single Business Enterprise
Where two or more corporations operate a single business, the courts have been unwilling to allow affiliated corporations that are not directly involved to escape liability simply because of the business fragmentation. Green v. Champion Ins. Co., 577 So.2d 249 (La.App. 1st Cir.1991), writ denied, 580 So.2d 668 (La.1991); Lucey Manufacturing Corp. v. Oil City Iron Works, 15 La.App. 12, 131 So. 57, 61 (2d Cir.1930).
Citing Green v. Champion Ins. Co., supra, the trial court noted the courts may disregard the concept of corporate separateness to extend liability to affiliated corporations to achieve equity. The Green court stated that whether an affiliated group of entities is a "single business enterprise" (SBE) is a question of fact. In determining whether a corporation is an "alter ego" or part of a "single business entity," the court must look at the substance of the corporation rather than the form. The Green court supplied a non-exclusive list of considerations similar to those used to "pierce the corporate veil."[1]
*197 The trial court determined that Entergy was a single business enterprise because of four factors to wit:
1. Testimony and exhibits that were admitted into evidence shows that Entergy Corporation has ownership of sufficient stock of its subsidiaries to give it actual working control over such subsidiaries;
2. They share common directors and/or officers;
3. Entergy published an advertisement in the official journal for Claiborne Parish on May 9, 1996, which publicly stated that Entergy and its subsidiaries were considered to be "one" company operating under "one name," and the ad went on to state as follows "we are unifying five separate power companies into one cohesive whole. Streamlining operations, Eliminating redundancies, Pooling resources."
4. The checks sent by Entergy as payment to Haynesville pursuant to its franchise agreement reflect that payment is made to the Town of Haynesville by "Entergy Services, Inc. Agent for Entergy Corporation, Entergy Mississippi Inc., Entergy Services, Inc., Systems Fuels, Inc., Entergy Gulf States, Inc., Entergy Louisiana, Inc., Entergy New Orleans, Inc., System Energy Resources, Inc., Entergy Operations Inc., Entergy Arkansas Inc."
With respect to the trial court's finding that Entergy had working control over all of its subsidiaries, we note that control alone is not sufficient to warrant a piercing of the corporate veil. "The determination of whether the corporate veil has been pierced and the corporation is merely the `alter ego' of the shareholder is made by considering the totality of the circumstances." Shoemaker v. Giacalone, 34,809 (La.App. 2d Cir.06/20/01), 793 So.2d 230, writ denied, 2001-2614 (La.12/14/01), 804 So.2d 632. The involvement of a sole or majority shareholder in a corporation is not sufficient alone to establish a basis for disregarding the corporate entity. Id. Louisiana courts are very hesitant to hold a shareholder, officer or director personally liable for corporate obligations. Id. It should be kept in mind that in Louisiana the concept of the separation of the corporate entity from those who compose it is the general rule and is firmly established. Id. La. C.C. art. 24. Consequently, we find that the mere fact that there is a commonality of personnel and centralization of power by virtue of ownership of stock insufficient to warrant a piercing of the corporate veil. Moreover, the corporate structure and activities of Entergy are in compliance with the PUHCA, 18 C.F.R. § 45.1 et seq. The act allows for the interdependence and overlap of officers or directors in public utility companies as long as compliance with regulatory guidelines is met, or in some instances the overlap of officers must receive regulatory approval. To find that the commonality of personnel or centralization of certain aspects of control constitute a single business *198 enterprise in the context of a public utility would undermine the PUHCA.
We also find that the court erred with respect to its finding that Entergy is a single business enterprise because of the subject advertisement. The trial court heavily relied upon a newspaper advertisement which ran May 9, 1996, in the Homer, Louisiana, newspaper stating that LPL was now Entergy which had unified "five separate power companies into one cohesive whole." The advertisement extolled various advantages to the citizens by having one "world class energy company" supply its electricity. After stating that Entergy was putting 12,000 employees and 80 years of experience to work for the customers, the ad concluded with "One company. One name. And one commitment to serve you like no other company can. Entergy." The semantics of a commercial advertisement cannot be construed to alter an unambiguous agreement between Entergy and Haynesville.
Lastly, the court also erred in its determination that the contract was ambiguous and because LP & L changed its name to Entergy Louisiana and Entergy Services sent checks to Haynesville "as agent for" a number of Entergy subsidiaries. We find that there are several errors in the court's reasoning with respect to this determination.
First, ELI makes remittances and performs similar services for each of the individual utilities that are subsidiaries of Entergy Corporation in its role as a service company in the Entergy holding system. That fact does not make the contract ambiguous.
Moreover, the events did not occur until 1996, more than ten years after the MFN agreement. Thus, subsequent changes, not contemplated by the parties at the time of the agreement, cannot be considered to render the contract ambiguous. The testimony of Mr. Crocker established that the Town did not contemplate that the "Company" in the MFN agreement was any other entity other than LP & L.
In addition, no evidence was offered indicating that it was the intent of the parties that the application of the MFN agreement would be triggered by payment of a franchise fee higher than 2% by any Entergy subsidiary other than ELI. The Town argued that the agreement should be interpreted to find that ELI is a single business enterprise and that its corporate form should be disregarded. However, Louisiana law is well established that corporate separateness is to be recognized and respected. Piercing the corporate veil is considered a radical remedy only employed in exceptional circumstances. There has been no evidence or allegation that Entergy or any of its corporate subsidiaries were formed or structured to commit fraud or deceit on the Town of Haynesville.
There is also no grounds to pierce the corporate veil on the basis of the "alter ego" theory. An alter ego analysis involves the consideration of five factors:
(1) commingling of corporate and shareholder funds
(2) failure to follow statutory formalities for incorporating and transacting corporate affairs;
(3) undercapitalization
(4) failure to maintain separate bank accounts and bookkeeping records; and
(5) failure to hold regular shareholder and director meetings.
Amoco Prod. Co. v. Texaco, Inc., 2002-240 (La.App. 3d Cir.1/29/03), 838 So.2d 821, writ denied, XXXX-XXXX, XXXX-XXXX (La.6/06/03), 845 So.2d 1096. The evidence in this case establishes that Entergy Corporation *199 and its subsidiaries are not alter egos of each other. None of the five factors are satisfied by the evidence in the record. There is simply no wrongdoing or other extraordinary circumstances present in the relationship between Haynesville and LP & L that justifies disregarding the law of persons and the Louisiana corporations.
Lastly, the terms of the MFN agreement are not affected by the single business enterprise theory. Indeed, if it had been the parties' intent to provide for an increase in the fee paid by LP & L to Haynesville in the event an affiliate were to pay a higher fee to one of its municipalities, this could have been stated expressly or, in any event, should have been proven by the Town by introduction of evidence regarding that intent. The use of the single business enterprise theory for the purpose of interpreting this provision of the agreement is improper.
Moreover, even under the single business enterprise theory, there is no allegation or evidence that the SBE misappropriated resources thereby making LP & L unable to meet its obligations under the contract. Consequently, we find that the court's finding of a single business enterprise was improper, and we reverse any award of damages.

CONCLUSION
Based on the above, we reverse the trial court's judgment finding that the contract was ambiguous and that Entergy is a single business enterprise. We also reverse the award of damages. Costs assessed equally between the parties.
REVERSED.
DREW, J., concurs with the result.
NOTES
[1] The illustrative list are considerations of whether a group of entities constitute a "single business enterprise":

1. corporations with identity or substantial identity of ownership, that is, ownership of sufficient stock to give actual working control; 2. common directors or officers; 3. unified administrative control of corporations whose business functions are similar or supplementary; 4. directors and officers of one corporation act independently in the interest of that corporation; 5. corporation financing another corporation; 6. inadequate capitalization ("thin incorporation"); 7. corporation causing the incorporation of another affiliated corporation; 8. corporation paying the salaries and other expenses or losses of another corporation; 9. receiving no business other than that given to it by its affiliated corporations; 10. corporation using the property of another corporation as its own; 11. noncompliance with corporate formalities; 12. common employees; 13. services rendered by the employees of one corporation on behalf of another corporation; 14. common offices; 15. centralized accounting; 16. undocumented transfers of funds between corporations; 17. unclear allocation of profits and losses between corporations; and 18. excessive fragmentation of a single enterprise into separate corporations. Green, supra at pp. 257-258.